
## BASS & CARTER v. GILLILAND'S HEIRS.

1. The vendor of land executed a bond, reciting that he had sold to the obligee " half of the south of section 17, &c. :" Held, that as according to our surveys there was no such sub-division, the land sold must have been the " half of the south half of section 17, &c.," and such was but a reasonable construction of the terms used ; especially when considered in reference to the principle that authorises a bond to be construed most strongly against the obligor. But if the contract could not be carried into effect by reason of the ambiguity, the bond might be reformed on proof of fraud, mistake, or want of skill in expressing the intention of the parties.

2. Where the vendor of land prevents the vendee from paying the purchase money, according to the terms of his contract, when the latter is ready and offers to pay, he cannot insist upon its non-payment as a reason why he should not be compelled to execute his contract.

3. Although the condition of a title bond, provides, that if the vendee shall pay his notes when the same becomes due, the bond shall continue in full force ; if not, then the bond is to be handed over to the vendor and the notes given back to the vendee, it may be questionable whether the vendee can put an end to his contract by failing to pay. But, if when the day of payment arrives, the vendee announces his readiness, and the vendor assents to a delay, the latter cannot refuse to execute the contract upon the ground that the right of rescission was mutual, where it appears that the vendee has been all the time both ready and willing to comply with his undertaking.

4. Where a vendor who has undertaken to convey one-half of a tract of land, states in answer to a bill for a specific performance, that he has conveyed to a third person, about two-thirds of it in quantity and one-half in value ; if the vendee elects to take the remaining third, a decree directing a title to vest in him for that quantity, being the lands unsold by the vendor, would be regular.

5. Where the vendee of land files his bill for a specific performance of the vendor's contract, upon an allegation of an actual tender of the purchase money on the day when it became due, an avowal of his continued readiness to pay, and an offer to bring the money into court ; if the tender be proved, and there be no evidence to show that the vendee has not retained the money, he should not be charged with interest. And in such a case, an offer to bring the money into court, as the chancellor may direct, is sufficient to authorise chancery to entertain the bill, and administer justice between the parties.

Writ of Error to the Court of Chancery sitting at Montgomery.

This was a suit commenced by the ancestor of the defendants, in Talladega, and transferred from the chancery court of that county, because the presiding chancellor had been interested as counsel in the cause. The object of the bill was to injoin a suit brought by Bass for the recovery of the possession of the land in question, and to enforce the specific performance of a contract to convey the title to the complainant. The contract of Bass is evidenced by his bond, in the sum of one thousand dollars, dated the 18th April, 1834, conditioned as follows : " The condition of the above obligation is such, that the said John Bass has sold unto John Gilliland, half of the south of section 17, township 18, range 6, which is to be divided equally between them, by two disinterested men, for which he is to pay said John Bass five hundred dollars by the first of October, 1834, for which payment said Bass doth bind himself to make a lawful title so soon thereafter as the patent shall be obtained from government. Now, if the said Gilliland shall well and truly make payment when the same becomes due, this obligation shall remain in full force and virtue, if not, then the bond to be handed over to said Bass, and notes given back to Gilliland." The bill affirms that the purchase money was duly tendered and refused, &c.

As to Carter it is alleged that he had purchased from Bass two hundred and twelve acres of the half section of land, with a full knowledge of the contract between Bass and the complainant.

Bass in his answer, admits the contract as stated between the complainant and himself, denies that a legal tender was made of the purchase money according to the terms of the complainant's contract with him, &c.; insists that the same is at an end, and that he cannot be compelled to convey the land according to the condition of his bond. He admits the sale of a part of the half section of land to Carter, but avers that the part retained by him is of equal value with that sold.

Carter admits the purchase of two hundred and twelve acres, part of the half section; that he purchased with a knowledge of the contract which had been entered into between Bass and the complainant, but the former told him that the latter had forfeited it: *Further*, Bass always told him that he intended Gilliland should have the land on his side the branch, and that he (Carter) should have the part that lay on the side of the branch on which he resided,

Many witnesses were examined at the instance of the complainants, and several depositions were taken for the defendants. The only question arising upon the evidence, is whether Gilliland, the purchaser, tendered the money to Bass on the day it became due, or was excused, or prevented by him from making the legal tender. This question is sufficiently discussed in the opinion of the court, so as to render a recital of the proofs wholly unnecessary.

The chancellor was of opinion that the evidence very satisfactorily shows, that Bass designedly used means to avoid meeting the complainant, and did actually prevent him from making a punctual payment of the money, and that the condition of the bond was sufficiently distinct and certain to enable the court to understand what was the contract of the parties. *Further*, that as the complainants were willing to accept of so much of the half section as had not been conveyed to Carter, in lieu of a moiety thereof, the court adjudged and decreed that the title to the same should be vested in the complainants. The chancellor also determined that it was not a pre-requisite to the relief sought, that the complainant should have paid the money into court, but that the bill was sufficient in offering to pay the money into court whenever directed to do so: and as a condition on which the title would vest, it was competent for the court to require the money to be paid; which in the present case was ordered, but without interest, because a payment was prevented by Bass.

It appearing that five hundred dollars had been paid to the register for the use of Bass, the chancellor rendered a decree according to the principles above stated; adjudging also, that a trial of the suit at law be perpetually injoined, and that Bass should pay all costs: *and lastly*, " that the register pay over the said money to the said Bass, on his delivering up the notes which he holds for the same, to be cancelled, and filing with the register, under his hand and seal, a release of his right to an appeal or writ of error—the register retaining so much of the money as may be sufficient to satisfy the costs for which Bass is liable."

PECK, T. WILLIAMS and RICE, for the plaintiffs in error. The complainant was not entitled to a decree in his favor, because the agreement set out in the bill is not sustained by the proof. [4. Porter's Rep. 297; 1, Ala. Rep. 330; 3 Id. 421.] The contract

disclosed in the condition of the bond, is void for ambiguity, apparent on its face; and as neither mistake, or fraud, are charged, it cannot be aided by parol proof. [Paysant v. Ware & Barringer, 1 Ala. Rep. N. S. 164; 2 Story's Eq. 76;] Gilliland was not bound by the bond to perform any duty, but the entire obligation rested upon Bass; as is it not obligatory upon both, it cannot be enforced for want of reciprocity. [Lewis v. Love & Lane, 1 Ala. Rep. 341; 2 Story's Eq. 52–3–75–6–9–80; Parkhurst v. Van Cortlandt, 1 Johns. Ch. Rep. 282 ; Id. 370; Boucher v. Buskirk, 2 A. K. Marsh. Rep. 345.] *Lastly*, Bass is entitled to interest upon the amount of the purchase money, as Gilliland did not bring the amount of principal into court. A plea of tender is never good, unless the money is actually brought in, and in this respect the bill must be assimilated to such a plea at law.

Moody, for the defendants in error. If it were conceded that the time of paying the purchase money, were of the essence of the contract, it ceased to be so by the subsequent agreement between Bass and Gilliland. Gilliland was desirous, and actually offered to perform his engagement with puntuality, but was prevented by his vendor, who cannot be allowed to profit by his own want of good faith. [2 Story's Eq. 51–2–4.] As to the description of the land in the bond, it is certainly sufficient to indicate the half of the south *half* of section seventeen, &c., but if not, it is then insisted, that the insufficient and ambiguous description is attributable to a meditated fraud on the part of Bass; if a fraud is not inferrable, then there is a mistake, and in either case, the contract will be reformed so as to make it speak the intention of the parties. [1 Story's Eq. sec. 59, 184, 185, 188, 154, 155, 190, 152, 153, 156, 161, and note 1, p. 175; 3 Mason's Rep. 10; 1 Johns. Ch. Rep. 607; 2 Id. 585, 630; 4 Id. 144.] The answer of Bass is sufficient of itself to show what was the contract of the parties; but independently of that, the proof is as full as could be desired to identify the land and show the meaning and intention of the parties.

As to the manner of dividing the land, Bass should not object; he himself divided it according to quality and quantity, as his answer impliedly affirms, by the sale and conveyance to Carter. The complainants assented to this division, and accepted a de-

cree for much less than a quarter section, and the answer of Bass as well as the evidence estops him from objecting to the decree on this point. Gilliland's heirs cannot be charged with interest— the money was kept by the complainants in an inactive state in consequence of the refusal of Bass to accept it, and he shall not derive a profit from it at their expense.

COLLIER, C. J.—It is certainly an acknowledged rule in equity, as well as at law, that the proofs must harmonize with and sustain the allegations of the complainant's bill, in order to entitle him to the relief sought. In the present case, the ' contract sought to be enforced, is alleged to be an undertaking by Bass to make a title to Gilliland to half of the *south half* of section seventeen, &c.; while the vendor, by the condition of his bond, agrees to perfect the vendee's title to " half of the south of seventeen, &c." It is insisted that the contract is too uncertain in its terms to authorize a court of chancery to enforce its performance, and is not such as the complainant has stated.

The terms employed in describing the sub-division of land, the moiety of which was sold to the complainant, are not so precise and accurate as they should have been; yet it is believed that they are sufficiently descriptive to indicate what was the contract of the parties. By the half of the south of a section, we must understand a quarter section; the south of it must have some legal sub-division, and as there is none to which that term can appropriately apply but a half section, the reasonable conclusion is, that, that was the quantity intended to be described.—*Again:* Such a construction must be placed upon the contract that it may if possible be effectual, *ut res magis valeat quam pereat,* and to this end, it is allowable to interpret it most strongly against the obligor. If there were reasonable doubt upon the face of the agreement, what was the extent of the obligation of the vendor, that doubt would be removed by the application of these rules.

But if it were conceded that the written evidence of the contract is too imperfect to warrant such a decree as the bill seeks, does the conclusion follow, that the defect cannot be supplied by extrinsic proof. Will not a court of equity reform a contract, so as to make it conformable to the precise intent of the parties, if from fraud, mistake, or want of skill, the meaning and intention of

the parties has not been properly expressed, but has in reality been changed. [Paysant v. Ware, Barringer, et al., 1 Ala. Rep. 160, and cases there cited.] The answer of Bass, as well as the proofs in the cause, very satisfactorily show that half of the south half of the section was the subject matter of the sale, and if the bond does not prove this, it is to be attributed to fraud, mistake or want of skill in drawing it: and upon either ground, might (if necessary) be reformed.

We will not inquire whether, to entitle the vendee to a specific performance, it was indispensable that he should have paid or tendered the purchase money on the day it became due ; but conceding this to have been necessary, we will consider whether it was done, or dispensed with by the vendor. On the day appointed, the vendee meets Bass in the neighborhood of the residence of the latter, and proposes to pay him five hundred dollars, the amount stipulated, which the vendor refuses to receive, because some of it was bank bills : the parties then separate, the vendee to go to a neighbour's to get the specie, with the agreement that they should meet again in the evening, when the vendor would receive the money. In the course of the day the vendee received several hundred dollars in specie, met the vendor and offered to pay it ; the vendor then proposed, that as it was late, and he was not at home, the vendee should call at his house the next morning : this was assented to. The next morning, a large majority of the witnesses testify that the vendee went to the vendor's house with the avowed purpose of paying him the money, about eight, or half past eight o'clock, but the latter had left home about fifteen minutes previonsly ; the vendee went in pursuit of him, but whether he overtook him does not positively appear. The next week, the vendee having in his possession more specie than was due to the vendor, offered to pay him so much as he was entitled to. In addition to all this, it is shown that Bass frequently said before the money became due, that the vendee should not have the land if he could prevent it ; that he could not get the money at the day it was payable ; that the contract was defective, &c.

It is perfectly clear that the vendor assented to the non-payment on the day the money became due, and on the succeeding day he prevented the payment by having left home at an early hour. The vendee seems to have been prompt in endeavoring

to comply with his contract, and to have done as much as could reasonably have been expected of him. When the vendor waived a strict performance by the vendee, and designated another day, it was incumbent on the latter to pay on that day, or excuse himself for the neglect. Here, the vendee was in no default, but attended at the appointed time and place with requisite promptness; having done this, he could not be expected to remain at the vendor's house until his return, or follow him from place to place. It was quite sufficient that he renewed the offer to pay, upon meeting him the next week.

If then, fault rests upon any one, for the non-payment of the purchase money, it is the vendor, and he cannot, consistently with the principles of natural justice and equity, set it up as a ground why a specific performance should not be coerced.— [Driver v. Fortner, 5 Porter's Rep. 21, 22, and cases there cited.]

It is argued for the plaintiff in error, that as the contract left it discretionary with the vendee whether he would consummate his purchase, it imposed no obligation upon him; and as it must be binding upon both parties, or voidable, at the election of either, it cannot be enforced against the vendor. The recital of the contract indicates that it was the intention of Bass to sell, and Gilliland to purchase an undivided moiety of a half section of land : the latter gives his note for the purchase money, and the former undertakes, upon the payment of the note, to make a title as soon as he shall obtain a patent from the government. Had the recital stopped here, there would have been no room for controversy ; but the condition of the bond goes further, and provides that if the vendee shall pay his note when the same becomes due, the bond shall remain in full force ; " if not, then the bond to be handed over to said Bass, and notes given back to Gilliland." These latter terms are unusual in such contracts, and if literally interpreted, would seem to provide for its rescission. But whether they authorised the vendee to put an end to the contract by failing to pay the purchase money, is a question, which, according to the view we take of the case, need not be decided. We will, however, cite one case in which the facts were somewhat analagous upon this point. In Barbour's ex'rs v. Brookie, [3 J. J. Marsh. Rep. 512,] it was held, that a title bond for land, to be paid for by instalments, containing the following clause,

" but if said vendee fail to make good the above payments, in that case the above tract of land to revert back to the vendor," did not authorise the vendee to surrender the land and rescind the contract at his option.   The clause was considered merely as declaratory of the law, viz : if the purchase money was not paid, the vendor should hold the title.   Conceding to the last clause in the condition of the bond, the effect that is claimed for it by the vendor, and still it cannot avail him as a defence.   The evidence recited showed that neither party considered the contract at an end when the money became due, but acted upon the hypothesis that its obligation still continued.   What passed between them at that time, amounted to a re-affirmation, and took away the right of rescission under the contract, if it was provided for by its terms.   It was a renewal of the vendee's promise to pay his note, and of the vendor's undertaking to make a title, if the money was paid within the time given; and neither party can absolve himself from a performance at pleasure, but to give to either this privilege, it must appear that the other was in fault.   We have already seen that no fault is attributable to the vendee.

Bass, in his answer, admits that he has sold two hundred and twelve acres of the half section to Carter, which is of about equal value with the one hundred and eight acres, to which he still retains the title.   It was clearly competent, if the complainants so elected, for the chancellor to have ordered a conveyance of the latter part of the land, without requiring a division first to be made according to quality and quantity.   The sale made to Carter, and the affirmation of the equality of value of the respective parcels, forecloses all objection on this point by Bass; for in this respect he cannot be prejudiced, but the decree may be beneficial to him, as it relieves him from accountability to Carter, which would result from an interference with the sale to him.

The bill, we have seen, alleges a tender of the money by Gilliland, or that which is equivalent, when the same became due; and this allegation is abundantly proved.   It also goes further, and offers to bring the money into court, or pay the same to Bass, as the order or decree of the court may direct.   This, we think, in the absence of all proof to show that Gilliland, in his life-time, or his heirs since his death, have not kept the money ready to pay whnever required, is sufficient to have authorized the chancellor to relieve the complainants from the payment of interest.   The

vendor voluntarily refused to receive the money, and it was the duty of the vendee to have retained it, and if he has done nothing more, it would be unjust to charge him with the payment of interest.

It is insisted that the complainants cannot claim relief upon the ground that a tender was made by the vendee; because the money was not brought into court and deposited at the time the bill was filed. It may be conceded that such was the law in respect to pleas of tender to an action at law; but the analogy of such a plea to the bill in the present case, is not perceived. In the suit at law the plaintiff is seeking to recover a sum of money, a part or all of which, the plea admits to be due and offers to pay. Here, the vendor is seeking to dispossess the vendee of a tract of land which he had previously sold him, upon the ground that he had not paid for it according to his contract; the vendee goes into equity, insisting that the money was duly tendered by him, and refused, expressing a readiness and willingness to pay it as the court may direct, and praying a specific performance of the contract. The bill seems to us to go sufficiently far, quite as far as is usual, where a similar object is sought to be accomplished. If the vendee had paid the money into court, and the rules applicable where a plea of tender is interposed, were to govern, the vendor might have taken it out, and either accepted it in full satisfaction of the purchase money, or proceed in his action at his option. [2 Arch. Prac. 203–4.] And this, although the vendor had been incapable of making a title according to his contract. To prevent the possibility of loss to the vendee, we think it most proper that he should retain the money in his hands, subject to such order as the court might make. If the money should not be forthcoming upon the requisition of the chancellor, it would be entirely competent to dismiss the bill, or so dispose of the entire case as to protect the rights of all parties.

It remains but to add that the cause has been disposed of, according to the principles we have laid down, and the decree is consequently affirmed.