PAYNE *et al.* v. DOTSON *et al., Appellants.*

81 145
171 299
h175 402

**Dower, when Barred.** Under Revised Statutes 1879, section 2204, a wife's dower in her husband's estate is not forfeited, unless she leaves him of her own free-will, and afterward lives in adultery.

*Appeal from Cass Circuit Court.*—HON. NOAH M. GIVAN, Judge.

AFFIRMED.

*Wooldridge & Daniel* for appellants.

The court erred in refusing the declarations of law asked by the defendants. The marriage of Eliza Childress to Payne was illegal and void, and rendered her liable to prosecution for bigamy. R. S., §§ 1533, 1534. The marriage of plaintiffs being void, their living and cohabiting with each other was adulterous. R. S., § 2204. Adultery is the main offense which causes the forfeiture of dower. *McAllister v. Novenger,* 54 Mo. 251; *Lusk v. Lusk,* 28 Mo. 91; *Bostock v. Smith,* 34 Beav. 57; *Woodward v. Dowse,* 10 C. B. (N. S.) 722. The fact that at the time of her marriage to her co-plaintiff, she may have believed her husband to be dead, does not legalize or validate this marriage, or take away its criminality. *State v. Whitcomb,* 52 Iowa 85, (35 Am. Rep. 258); *State v. Welch,* 73 Mo. 284; 1 Wharton Crim. Law, (6 Ed.) § 297; *Beckham v. Nacke,* 56 Mo. 546; *Cobbey v. Burks,* 11 Neb. 157; *Redmond v. State,* 36 Ark. 58; *State v. Griffith,* 67 Mo. 287; *Comm. v. Mash,* 7 Metc. 472; *R. v. Gibbons,* 12 Cox's Crim. Cases 337; *Comm. v. Thompson,* 6 Allen 591; *Fox v. State,* 3 Tex. Ct. App. 329; *Comm. v. Boynton,* 2 Allen 160; *Dudley v. Sautbine,* 49 Iowa 650, (31 Am. Rep. 165); *Halsted v. State,* 12 Vroom (N. J.) 552, (32 Am. Rep. 247); *State v. Bullinger,* 54 Mo. 142; *Ferrill v. Page,* 30 Am. Rep 617, note.

10—81

*C. W. Sloan* for respondents.

The court did not err in its judgment and rulings. Childress went away from home, and his wife believed him to be dead, and her marriage to Payne was in good faith and without knowledge that Childress was then alive. There can be no pretense that she was intentionally guilty of the crime of adultery, within the meaning of Revised Statutes, section 2204, so as to bar dower. This case is unlike *McAllister v. Novenger*, 54 Mo. 251. There the wife voluntarily abandoned the husband. In this case the husband abandoned the wife. Under the statute, in order to bar dower, in addition to adultery, the wife must " voluntarily leave her husband and go away and continue with an adulterer." A wife will not forfeit her dower by living with a man to whom she had been married, under a mistaken belief that her first husband is dead, if she had good cause to believe him dead. 1 Washburn Real Prop., (2 Ed.) 196; 4 Kent, pp. 52, 53, and notes ; 2 Crabb Real Prop., 173 ; 1 Cruise Dig., 175, 176. She must have eloped from her husband, as well as committed adultery. *Coggswell v. Tibbetts*, 3 N. H. 41; 2d Inst. 435 ; *Bell v. Nealy*, 1 Bailey (S. C.) 312, (19 Am. Dec., and notes and authorities cited); *Reel v. Elder*, 62 Pa. St. 316 ; *Shaffer v. Richardson*, 27 Ind. 122; *Graham v. Law*, U. C. C. P. 310; *Heslop v. Heslop*, 82 Pa. St. 537; *Pitts v. Pitts*, 44 How. 64 ; *Walters v. Jordan*, 13 Ired. (N. C,) 361 ; *Hawkins v. Brittel*, 1 Houst. (Del.) 224 ; *Richeson v. Simmons*, 47 Mo. 20.

Ewing, C.—This was a suit for dower, in which the plaintiff alleged she was married to Jas L. Childress in May, 1851. That he died in 1879 seized of certain real estate, describing it, in which she had never relinquished her dower; that she and her co-plaintiff were lawfully married ; and that the defendants were in possession of the land, and prays that her dower may be assigned.

Defendants answered, alleging that plaintiff is not

entitled to dower; that she is not lawfully married to her co-plaintiff; that in 1862 Childress joined the Confederate army; that plaintiff, his wife, went away and lived in adultery with the plaintiff, William T. Payne, and continued to live with him; that their marriage was void, and that plaintiff is thereby barred of her dower. Plaintiffs, in their reply, admit that Jas. L. Childress joined the Confederate army, and aver that afterward, and prior to the marriage of plaintiffs, said plaintiff Eliza, was informed by relatives and others, supposed to be informed on the subject, that said James L. Childress was dead, and so believing he was dead she, in 1864, in good faith, was married to her co-plaintiff, William T. Payne, by a minister of the gospel; that they have since continued to cohabit together as husband and wife; that after said Childress joined the Confederate army in 1862, he never returned to, nor communicated with said Eliza in any way, and that she never saw him afterward; that said Childress left with her, when he joined the army aforesaid, several children, born of their marriage, whom she has since kept and supported, and that plaintiffs, since their marriage, had children born to them. A jury was waived, the case submitted, and there was judgment for the plaintiff.

The evidence very clearly tended to prove that Childress left his wife in 1862; that she never heard from him again until after she married Payne; that one George Bradbury, a brother-in-law of Childress, informed her that Childress had been killed, and detailed the circumstances; that he told Wm. T. Payne the same thing; that Eliza Payne represented herself to William T. Payne as a widow; that understanding Childress to be dead, from rumor, and from statements by his relatives, plaintiffs married in January, 1864, and lived together as man and wife; that they kept, and took care of two of Childress' children, born of the marriage between him and Eliza Payne; that in 1867 they heard Childress was living in Texas; that at that time they had had three children since their marriage; that that was the first they heard that Childress was alive. It was

admitted that said James L. Childress, the husband of plaintiff, Eliza Payne, returned to this State about the year 1867, and that about the time of his return, said plaintiff was informed of the fact of such return, and of the fact that afterward, and until his death in 1879, James L. Childress resided in the county of Moniteau, in this State. It is admitted, that after the return of said Childress to this State in 1867, said plaintiff and he never communicated with, or saw each other. It is also admitted, that in August, 1866, letters of administration were issued on the estate of Jas. L. Childress, and his land sold in 1867 to the witness, Bradbury. The court gave the following instruction for the plaintiff:

" That if the court, sitting as a jury, believe that about the month of January, 1862, Jas. L. Childress, then the husband of plaintiff, went away from home and joined the Confederate States army, and that afterward, when said plaintiffs were married, they had good reason to believe from information before that day received, that said James L. Childress had died, or had been killed whilst so in said Confederate States army; and that said plaintiffs have, since their said marriage, lived and cohabited together as husband and wife, and had children born to them, and have cared for and supported a child or children born of the marriage of said James L. Childress, and said plaintiff, Eliza; and that said James L. Childress, never after said marriage of plaintiffs, visited nor returned to said plaintiff, Eliza, or in any manner sought to claim her as his wife, then the court will decree to plaintiff, Eliza Payne, dower in and to one third in value of the lands described in the petition of plaintiffs for and during her natural life, although the court may find from the evidence, that said plaintiff, Eliza Payne, did, subsequent to her said marriage to her co-plaintiff, learn that said James L. Childress was still alive," against the objection of the defendants, and refused counter propositions of law for the defendants.

I.    The facts are well settled, and the whole case turns

upon the proper construction of section 2,204, Revised Statutes, 1879, which reads as follows: "If a wife voluntarily leave her husband, and go away, and continue with an adulterer, or, after being ravished consent to the ravisher, she shall be forever barred from having her jointure or dower, unless her husband be voluntarily reconciled to her, and suffer her to dwell with him." That the second marriage was illegal and void there can be no doubt. But this is not all of the inquiry. If adultery, no matter though plaintiff had the best reasons to believe, and did believe, that she was a widow when she went through the ceremony of marriage with Payne, was the sole thing required by the statute, then the defendants' case would be made out; but are there not other elements which must be coupled with the adultery, necessary to bar the widow of her right to dower? The statute says: "If a wife voluntarily leave her husband, and go away and continue with an adulterer, ect., * * she shall be forever barred from having her jointure or dower, unless her husband be voluntarily reconciled to her" etc. The evidence shows she continued with the adulterer, and that her husband was never voluntarily reconciled to her. The only remaining question is, did she "voluntarily leave her husband and go away" etc. This section of the statute is taken from, and is quite similar to what is known as the Statute of Westminster Second, 13 Edward 1, Chap. 34, which provides that: "If a wife elope from her husband and continue with an adulterer, she shall be barred of her dower, unless her husband willingly and without coercion of the church, reconcile her, and suffer her to dwell with him." This statute requires an additional element to adultery to bar the wife's rights. There must also be voluntary separation, or elopement by her. And this would seem to be the universal construction of this statute. Co. Lit., 32, 2 Inst., 435. In *Reel v. Elder*, 62 Pa. St. 308, about two weeks after marriage Elder left clandestinely, without his wife's knowledge, was absent many years and procured a divorce, which was afterward

declared to be a nullity. During this time the wife committed adultery. After his return they lived together several months. Again separated, the man living with another woman, the wife with another man. The court held the wife entitled to dower, saying: "There was not only no evidence that plaintiff had willingly left her husband, but the proof was direct, positive, and uncontradicted, that he had deserted her." It was held in *Hethrington v. Graham*, 6 Bing. 31, that if a wife voluntarily leave her husband, or the parties separate by mutual consent, and the wife afterward lives in adultery, she is barred of her dower. In *Woodward v. Dowse*, 10 C. B. N. S. 722, it was held, that the wife forfeits her dower, if she lives in adultery, though she originally departed from her husband's house in consequence of his cruelty. In *McAlister v. Novenger*, 54 Mo. 251, sometime after the marriage in Pennsylvania, the husband wished to start to Missouri to buy a farm, and wished plaintiff to accompany him. She declined on the ground that she might not be satisfied in Missouri. Some years after the husband left, the wife committed adultery, and afterward married another man, knowing her husband to be living, and where he was. Held that she was barred.

All the cases I have been able to find, hold the true construction of similar statutes to be, that if a woman leave her husband with her own free will, and afterward live in adultery, her dower is forfeit. It is said in II Crabb on Real Property, 173: "The wife's leaving her husband, must have been her own voluntary act, to create a forfeiture of dower under the statute; therefore, when a woman was kept from her husband by the contrivance of his relatives, and induced to marry another man under the assurance that her husband was dead, this was held not to be an elopement which barred her of her dower." *Cogswell v. Tibbetts*, 3 N. H. 41. In this last cited case, it is held that, by the common law, a woman did not forfeit her dower by committing adultery, even when she eloped with the adulterer, but that under the statute (Westminster) there could be no forfeit-

ure without what is denominated an elopement. 1 Wash. Real. Prop., 243; 4 Kent, (2 Ed.) top p. 55, note a. In *Shaffer v. Richardson*, 27 Ind. 122, it is held: "In order to bar the widow's interest in her deceased husband's estate, two things must concur: First: She must have left her husband; and secondly, have been living in adultery at the time of his death." This case in its facts, is very similar to the one under consideration. The husband left the wife; long afterward she was informed, and believed him to be dead; she afterward married another man, and afterward learned that her first husband was alive, but continued to live with the man she had married. In *Heslop v. Heslop*, 82 Pa. St. 537, and *Walters v. Jordan*, 13 Ired. 361, the same doctrine is announced. So in *Bell v. Nealy*, 19 Am. Dec. 686. In this case there is no evidence that the wife voluntarily left her husband, but on the contrary, that under the pretension of joining the Confederate army, he abandoned his wife; his relatives told her, as well as the man she married, that Childress was dead. In the language of Chief Justice Tindall in *Hethrington v. Graham*, *supra*, "we hold the construction of the statute to be what the words still will warrant, that if a woman leaves her husband with her own free will, and afterward lives in adultery, the dower is forfeited."

The judgment below is affirmed.   All concur.