MARIA CANTALUPO MORELLO

*v.*

ERMELINDA MALANGO CANTALUPO.

[Submitted April 6th, 1920. Decided May 13th, 1920.]

Where a woman voluntarily leaves her husband, and is never reconciled to him, and since leaving him she has continued to live with another man in adultery, she is not entitled to dower in her husband's lands, under *Comp. Stat. p. 2048 § 14.*

On pleadings and proofs.

*Messrs. Castellano & Abruzzese,* for the complainant.

*Mr. Joseph J. Pallitta,* for the defendant.

FOSTER, V. C.

This is a suit to quiet title to certain lands in the city of Newark, owned by complainant and in her possession, and which were conveyed to her on November 30th, 1918, by her brother, Antonio Cantalupo, who died testate on May 23d, 1919. The answer and counter-claim admit these facts, but state that defendant married Antonio Cantalupo on October 18th, 1900; that subsequent to the marriage and during the coverture, on September 5th, 1918, Cantalupo became seized in fee of the premises in question; that defendant did not join in the conveyance made by her husband to complainant, and she has never released her right of dower therein, and that upon the death of her husband she repeatedly requested complainant to adjust or settle with her for her right of dower in the premises, and this complainant refused to do, and defendant asks for an accounting of the rents and income of the property and for the assignment of her dower.

Complainant's answer to the counter-claim charges defendant with deserting her husband and having adulterous relations with one Frank Duco, and pleads in bar of her claim for dower, section 14 of the act relative to dower. *Comp. Stat. p.* 2048.

In support of complainant's contention, the proof is that one child, a boy now about eighteen years, was born about a year after defendant's marriage to Cantalupo (and it would appear that complainant held title to the premises in question for his benefit); that about 1903, when this child was about a year old, defendant began to receive attentions from Duco; her husband objected and became jealous and angry and on one occasion he slapped defendant's face for dancing too often with Duco; shortly thereafter defendant left her home and went to Germantown, Pennsylvania, where she remained in Duco's com-

pany for some days, where her husband found her and brought her back to her home in Newark; on her return she told complainant and others that she had sinned with Duco and was going away again, and a few days later defendant left her husband and child and was not seen again by any of her husband's family for nearly seventeen years; when she left her husband defendant went to Germantown and resumed her relations with Duco; they lived as, and claimed to be, man and wife; three children were born to them, and complainant and Duco still continue to live together as man and wife. Frank Cantalupo, the son, had not seen his mother since she deserted him, until the past year when he called at her home in Germantown for the purpose of obtaining from her a release of her dower or any interest she had in the property in question; defendant refused to give him this release, but later she called on him and on complainant and demanded $500 for the release of her dower.

Defendant states that she left her husband not in 1903 but in 1907; that he had always cruelly treated and abused her; that she was obliged to work to support herself; that the immediate cause for leaving her husband was a quarrel they had because she would not give him her wages; that he then stabbed her and drove her from her home, and he then ran away; that she went to a neighbor's in Newark and remained there for some days until she recovered from her wound, and on her recovery she went to her husband's home, removed her effects and went to Germantown, to a Mrs. Cappello, a stranger whom she had met but once and who invited her to visit her; that she was then pregnant and later gave birth to a girl who is now twelve or thirteen years old, and is the daughter of decedent; that she never met Frank Duco before 1909, and he became a boarder in her home in Germantown and has lived with her ever since; that her husband never became reconciled to her and made no effort to have her return and live with him; she states she has three children living with her, the oldest being the girl mentioned, but she refused to state who was the father of the other two children, one of them being only three years old:

27

It was admitted that Cantalupo had married again on May 26th, 1910, and defendant states that she called at her husband's home in Newark in 1910, and was told by his mother that he had obtained a divorce from her and had remarried.

Section 14 of the Dower act, which is in substance a re-enactment of the statute called *Westminster Second, 13 Edw. I. c. 34,* provides:

"That if a wife voluntarily leave her husband and go away and continue with her adulterer, she shall be disabled and forever barred from having her jointure or dower, unless her husband be voluntarily reconciled to her, and suffer her to dwell with him in which case she shall be restored to her jointure or dower."

This section of the act does not appear to have been construed in any of the published opinions of our courts.

Soon after the passage of the statute of Westminster, in 1285, it received an exposition that has been uniformly acted upon by the English courts to the present time, but this exposition has not always been followed in the several states in which the statute has been re-enacted, in substance or effect, or recognized as part of our common law. The point of departure between the English cases and most of those in this country being over the construction placed upon the word "willingly" as used in the statute of Westminster, and the word "voluntarily" as used in our own and similar statutes in various states. Based on *Coke Com.* in *2 Inst. 435,* and the statement in *Bacon's Abridgement,* as quoted in *9 Rul. Cas. L. § 46,* the English courts have uniformly held, "that it is not the manner of the going away, but the remaining with the adulterer in avowtry, without reconciliation, that is the bar of the dower." *Hetherington* v. *Graham, 6 Bingh. 135-31 Y. & P. 399; Woodward* v. *Dowse, 10 C. B. (N. S.) 722; 142 Eng. Reprints 637.*

In *Woodward* v. *Dowse, supra,* Mr. Justice Willis said that, "I think it is impossible more distinctly to lay down the law to be that, if the wife leaves her husband's house, no matter for what cause, and commits adultery, the penalty of the statute attaches."

The prevailing rule in this country is stated in *Scrib. Dow. 531,* and in *14 Cyc. 933,* to be that under the statutes of the states which have adopted adulterous elopement as a bar, two things must combine to constitute the bar: The departure of the wife must be voluntary on her part and she must continue with the adulterer. So that where the wife's desertion was caused by the cruelty or neglect of her husband ·her subsequent adultery will not constitute a bar. Citing *Rawlins* v. *Buttel (Del.), 1 Houst. 224; Walters* v. *Jordan (N. C.), 35 N. C. 361; Heslop* v. *Heslop, 82 Pa. St. 537; Stegall* v. *Stegall, 22 Fed. Cas. (13,351)* on the Virginia statute. See also *Cogswell* v. *Tibbetts, 3 N. H. 41; Payne* v. *Dotson, 81 Mo. 145;. Reel* v. *Elder, 62 Pa. St. 308,* and see also *5 Am. & Eng. Anno. Cas. 231; Bish. M. & D. (6th ed.) 627.*

Aside from the statement of defendant's sister that defendant's husband treated her cruelly, there is not the slightest corroboration of defendant's testimony from any of her relatives, friends or neighbors; and by her own testimony it appears that after her husband stabbed her and drove her from her home, he ran away, and nearly three weeks later, when she recovered from her wound, she returned to her home, found it intact and had no difficulty in removing her effects and taking them with her to Germantown, but ·she made no effort to take her child with her, and she did not attempt to have her husband punished for his atrocious assault on her, or to compel him to contribute to her support, and she offers no explanation for her abandonment of her child or for her failure, during all the years that have elapsed, to visit him, or to communicate with him, or to obtain the custody of him. Her explanation for selecting Germantown as a place of residence, on the invitation of Mrs. Cappello, a sympathetic stranger, is unsatisfactory, as Mrs. Cappello is not produced to corroborate her, and her absence is not explained. The unnamed neighbor who took defendant into her home when she says she was stabbed, is said to be dead, but no member of her family, or of defendant's family, and no physician is produced to show that defendant was actually suffer-

ing from a wound at the time, and not the slightest evidence is offered to show with whom defendant lived in Germantown during the period of over two years that elapsed, between the date when she states she took up her residence there and the date when Duco came to live with her.

Defendant contends that under the prevailing American rule the bar of the statute does not apply, because the facts show that she did not leave her husband voluntarily, but was driven from him and from her home by his cruel and abusive treatment, and further because it appears that after her departure her husband committed adultery in living until his death with the woman he married in 1910. The proofs do not support this contention. And no authority or rule of statutory construction is cited that will support defendant's claim that the commission of adultery by her husband, excuses or justifies the commission by her of a like offence.

It is not necessary for our present purpose, however, to determine between the correctness of the English view, that the cause and manner of departure are immaterial, as the essence of the offence is the commission of adultery, and that of the American cases which hold that the proofs must show a voluntary departure as well as adultery; for the established facts in the case bring it within the rule of both the English and American cases, as well as within the express terms of the act, and compel the conclusion that defendant voluntarily left her husband; that she was never reconciled to him, and that since leaving him she has continued to live with her adulterer and has thereby incurred the forfeiture of her dower imposed by the statute.

A decree will be advised for complainant.