(128 So. 396)

**PEARCE et al. v. THIRD AVE. IMPROVEMENT CO.**

**6 Div. 514.**

Supreme Court of Alabama.

March 27, 1930.

Rehearing Denied May 15, 1930.

Lange, Simpson & Brantley, of Birmingham, for appellant.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellees.

212

**BOULDIN, J.**

The bill was filed by Third Avenue Improvement Company, a corporation, against Marie Pearce, Willie L. Byrd, and Lula Tyus for the specific performance of an alleged contract for the sale of real estate.

Complainant is the purchaser, and respondents the vendors.

The property was owned by respondents, tenants in common, each owning an individual one-third interest.

Respondents, among other things, set up the coverture of Marie Pearce; that, as to her, the contract was void for want of the joinder of her husband in the contract to convey.

The court decreed partial performance as to the interests of the other cotenants. Respondents appeal.

The bill does not disclose that Marie Pearce was a married woman, nor otherwise indicate the contract was ineffective as to any of the sellers. The body of the bill deals with the contract as binding on all. But relief is prayed by way of partial performance in case no relief can be granted as to all the parties or interests in the property.

We find in this no variance between pleadings and proof. The prayer gave notice of the demand for partial performance, and left it to respondents to set up coverture or other defense.

The chief issue of fact is whether any contract was ever consummated.

The draft of the contract was made by Lamar Smith, representing Messer-Johnson Realty Company, a real estate brokerage company, named in the contract as agent for the sellers.

It appears Smith first obtained the purchaser's signature to the document in triplicate. It was then taken by Smith to Mrs. Pearce, who appears to have been the dominant actor and adviser of her associates in the matter. She signed the three copies, and later Smith obtained the signatures of the other two and delivered one of the documents to the purchaser.

It is claimed by respondents that at the time Mrs. Pearce signed she notified Smith that the $100, named as earnest money, was not satisfactory, and demanded $500 as earnest money before the contract became effective. In this connection it is claimed Smith then and there changed one of the three papers by inserting $500, but failed to change the others. All this is denied by Smith. Evidence corroborative of both sides on this issue is vigorously argued. It will not be reviewed in detail.

We note, however, that Smith did, at the time, and at Mrs. Pearce's instance, change the draft of the contract by inserting the words: "Interest assumed from 2/13/24," (meaning the interest on the mortgage) and "This contract shall be closed within 15 days from date." Certain figures, "$100.00" and "$500.00," admittedly written by Smith, were also put in evidence.

The original instrument in which respondents claim Smith inserted "$500.00" in lieu of "$100.00" was put in evidence. This original is not before us for inspection and comparison.

The well-known rule is that, where evidence before the trial court is not available to us, the finding of the trial court will not be disturbed, unless the evidence before us shows his conclusion was wrong, notwithstanding what may have appeared from the omitted evidence.

Without putting any special stress upon our want of opportunity to inspect the original documents, upon a careful consideration of all the evidence in the light of the circumstances, we are not prepared to hold the trial court in error on this issue.

It follows that this contract, modified as Mrs. Pearce required, was signed by all parties named therein, and delivered to the purchaser, who acceded to the changes inserted therein and tendered full performance within the fifteen-day period.

When vendors execute a contract in their own way and deliver same to the vendee who accepts the contract as it is, the legal status of the transaction is fixed. Although, as thus concluded, it is not so executed by one of several tenants in common as to become binding on him or her, it becomes binding on those who have lawfully executed it as to their distinct and severable interests. This elementary rule applies with equal force where one of the parties is under disability, as in the case of a married woman without the joinder of her husband.

While the tenants in common start out to convey all their interests together, it does not follow that because the effect of their joint action is to leave one not bound, the transaction is still in fieri and not binding on either.

Have the vendors delivered to the vendee the finished document as they intend to make it? If so, they cannot vary and contradict its terms as a valid written instrument pro tanto.

The case of Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A. L. R. 1153, holds nothing at variance with this elemental law of

contracts. The controlling fact in that case is that the purchaser obtained the signature of one tenant in common on condition that he would get the other tenant in common, a married woman, to join in the contract. He failed to procure her valid joinder in the contract for want of the joinder of her husband. Held, the contract was never completed, and therefore inoperative as to all. That case has an analogy in one phase of the present case. The deed drawn to be executed by all the vendors, and signed only by Miss Tyus to be delivered when duly executed by her associates who refused so to do, never became an effective deed.

The decree of the trial court correctly declared complainant's equities to rest upon the contract to convey, and accordingly divested the title of Miss Tyus by the decree.

The question of most difficulty is whether equity will decree specific performance as to the interests of Miss Tyus and Miss Byrd, thus constituting the purchaser a tenant in common with Mrs. Pearce, as to whom the contract was void.

Counsel on both sides, with commendable zeal, have presented numerous authorities having more or less bearing on this question. There is conflict of authority.

A number of cases have arisen wherein one tenant in common has executed the contract on his own behalf and as agent for the others without authority, and the others refuse to ratify his act. A kindred class is where one tenant in common makes the contract as if the sole owner, intending to have other tenants join with him in executing the conveyance, and they decline so to do.

Typical of the cases holding such contracts not enforceable pro tanto is Olson v. Lovell, 91 Cal. 508, 27 P. 765, followed in Wightman v. Hall, 62 Cal. App. 632, 217 P. 580.

These cases proceed on the broad ground that if a contract cannot be specifically enforced, according to the full intent of the parties, it cannot be enforced at all; that a court of equity will not make a new and different contract. This is the same ground upon which partial performance is challenged as an equitable principle.

In Brown v. Power, 263 Pa. 287, 106 A. 539, followed in Affrime v. Mandel, 267 Pa. 387, 111 A. 255, adult tenants in common entered into contracts to convey predicated upon or subject to the approval of the orphan's court so as to pass the title of minor tenants in common. Until so confirmed the transaction was regarded as in fieri.

In Hudson v. Cozart, 179 N. C. 247, 102 S. E. 278, the purchaser, as part consideration, agreed to erect upon the property a drying plant ready for the ensuing season. Held indivisible, and vendee not entitled to partial performance, no offer being made to erect the plant for a part title.

On the other hand, the case of Ward v. Walker (Tex. Civ. App.) 159 S. W. 320, is typical of cases holding contracts by tenants in common, not enforceable as to all interests, the proper subject of specific performance as to the interests of those who have properly executed the contract. In that case one of the vendors joining in the contract was a married man having a homestead right which he could not convey without the assent of his wife. In this regard it is quite analogous to the instant case.

Specific performance was granted as against other tenants in common joining in the contract. The court said (159 S. W. 324):

"We are unable to see anything unconscionable, inequitable, or unjust in requiring the appellees to perform, so far as they are able, the contract which they have deliberately made. The legal effect of the contract was that each of them for sufficient consideration bound himself to sell and convey the land, so far as he was able; that is, his undivided interest."

To like effect is Meek v. Walthall, 20 Ark. 648.

In our own case of Bartee v. Matthews, 212 Ala. 667, 103 So. 874, one tenant in common contracted to sell a complete title. Specific performance held proper against him and those in like position as to his moiety.

Specific performance pro tanto against a tenant in common who assumes to act for all, or who signs for others without authority, is recognized in other jurisdictions. Keator v. Brown, 57 N. J. Eq. 600, 42 A. 278; Melin v. Woolley, 103 Minn. 498, 115 N. W. 654, 946, 22 L. R. A. (N. S.) 595; Tobin v. Larkin, 183 Mass. 389, 67 N. E. 340.

Specific performance pro tanto at the election of the vendee where full performance cannot be had has been a recognized remedy in equity from our earliest judicial history. Bass v. Gilliland, 5 Ala. 761; McCreary v. Stallworth, 212 Ala. 238, 102 So. 52; Milton Realty Co. v. Wilson, 214 Ala. 143, 107 So. 92.

Special circumstances rendering such relief inequitable will be considered as in all cases seeking specific performance.

We have gone quite as far as other states in granting such relief, unless it appears to be inequitable; for example, specific performance is decreed upon a contract to convey lands incumbered by an inchoate dower right. A portion of the purchase money is withheld and secured to be paid when the dower right ends. This rule is adhered to, notwithstanding the uncertainty as to whether the inchoate right will ever ripen into an estate, and despite statutory provisions going to the existence as well as the quantum of

dower under varying conditions. Minge v. Green, 176 Ala. 343, 58 So. 381.

For the conflicting views in other jurisdictions, see note 46 A. L. R. 748.

In this case it does not appear that any inequitable results as to Willie Byrd and Lula Tyus will follow a specific performance passing their interests. Marie Pearce has succeeded to the interest of Willie Byrd pending the suit.

The main objection seems to be that such partial performance will bring about a co-tenancy between Mrs. Pearce and strangers, rather than those of her own choice. It is said this should not be done because the other owners never intended such result. In no case of part performance do the parties accomplish what they intend. The entire doctrine rests upon the fact that the vendors have intended and undertaken more than they can accomplish. Equity steps in to say if you cannot live up to the full terms of the contract, you will be held to performance so far as you can. The question then comes: Is it inequitable to Mrs. Pearce to let in complainant as a tenant in common of the property?

■ Bartee v. Matthews, supra, must be taken as authority to the contrary. If a cotenant who has in no way participated in the transaction is subject to have the interest of his associates pass into the hands of another by specific performance pro tanto, no good reason appears why the same result should not follow where the remaining cotenant was one of the actors ·bringing into being· the present status.

No case of joint occupancy of a home in close family relationship is involved. The property is held for rent or sale as a business proposition.

Tenants in common have the unquestioned right to sell their several interests. This carries the right to purchase and own such interest. Joint ownership is inherently subject to these incidents. At the same time no one is forced to rémain a tenant in common.

■ The right of partition in one of the modes known to equity is absolute. No case of oppressive scheming to get an interest through a court of equity and then force a sale in which Mrs. Pearce is not in position to take care of herself is presented.

We find no error in granting complainant specific performance as to two-thirds interest, with abatement of the purchase money for the other interest as to which specific performance cannot be granted.

Questions are raised as to the terms of redemption fixed by the decree.

Nearly six years have elapsed since the transaction was due to be closed. The cause was pending more than five years before final decree. During all this period the property has been in possession of respondents, who have received the rents, so far as rents have accrued, and complainant has retained the whole of the purchase money.

The matter of accounting for rents on the one hand and interest on the purchase money on the other hand becomes one of importance.

The general rule is well stated by Mr. Pomeroy in these words:

"The general rule is well settled that, where the contract is not completed until after the time stipulated for that purpose, but the court nevertheless decrees a specific performance, it will adjust the equities of the parties by placing them as far as possible in the same position which they would have occupied had the agreement been completed at the prescribed day, and to that end it will allow to the purchaser the rents and profits, and to the vendor interest upon the purchase-price from and after that date." Pomeroy's Specific Performance of Contracts (3d Ed.) § 429, p. 892.

■ Under our own case of Ashurst v. Peck, 101 Ala. 499, 14 So. 541, followed by later cases down to and including Forrester v. Granberry, 211 Ala. 402, 100 So. 551, the relation between the vendor and vendee under an executory contract to convey from and after the time the vendee becomes entitled to possession is that of mortgagor and mortgagee, and the vendor is accountable for rents and profits as a mortgagee in possession. This would imply, no other equity appearing, that the vendee occupying the place of a mortgagor must pay the mortgage debt with interest. Specific performance on behalf of the vendee in these cases is treated as analogous to redemption by a mortgagor as against a mortgagee in possession. We may note that in case of part performance, as here involved, the relation of tenants in common as the chosen status of the vendee-complainant is also to be kept in mind.

The court below charged the vendee with the interest ·paid by respondents on the outstanding mortgage, and expressly assumed in the contract. · This is not questioned. Pomeroy's Spec. Perf. § 431.

But the vendee was relieved of all other interest on the purchase money, all of which has remained in his hands until the·final decree. At the same time the vendors were charged with the rents received from the property.

■■ In applying equitable principles in fixing the terms of specific performance, one recognized rule is that the vendor in default shall not be rewarded for.his own fault. On the other hand, specific performance is what the term implies—enforcement of the contract as nearly as may be to accomplish its purpose. The vendee is not due specific performance and also damages as for its breach.

Damages are awarded, if at all, in adjusting the equities incident to proper relief by

way of specific performance in the particular case.

Accordingly, the vendee is not entitled to have the use of both the purchase money and the property pending enforcement of the contract.

The court below probably undertook to follow Bass v. Gilliland, 5 Ala. 761. A study of that case discloses that the court found, under the facts there appearing, the vendee had set aside, retained, held in readiness and unused, the money tendered, and, not having the use of it, should be relieved of interest, while the vendor was held accountable for rents. This rule has generally been applied where the vendor has notice that the money is lying idle. Beckwith v. Clark (C. C. A.) 188 F. 171, and cases there cited.

We conclude the rule in Bass v. Gilliland, supra, is not applicable here. There is no averment nor proof that the complainant has not had the use of the money, since the tender was made within fifteen days as per contract. No money was paid into court, as in case of plea of tender at law. While a tender within time was proper to perfect the right to performance, time being of the essence of the contract, still, by well-established rules in equity, there was no necessity to keep the money intact or pay it into court as at law.

Averment of ability, readiness, and willingness to pay when decreed is sufficient. A party is not presumed to have done a useless thing to the hurt of himself or of the other party. In view of the well-known banking and business facilities of our day, no necessity to keep the money idle will be presumed.

Aside from this, no tender ever was made except of the sum required to meet the cash payment. The outstanding mortgage, assumed as part of the purchase money, has been carried and paid off by the vendors. This sum became payable to them, and no tender has been made, nor was it required.

What, then, does equity demand touching payment of interest by the vendee and credit for rents received by the vendors? The underlying principle is: Equality is equity.

One feature of this case is that the value of the property is not measured by its rental value. The value, $15,500, was mainly based on its location, its availability for profitable improvement, and use. The only rental income received therefrom in its existing condition has been from a small residence, aggregating for the entire period $798. The interest on the purchase money would aggregate many times this sum.

Meantime, the vendors by noncompliance have deprived the vendee of the opportunity to make improvements and obtain an income commensurate with its location and value, or to sell it to others for such purpose. To undertake an ascertainment of the vendee's losses in this regard would lead into the field of mere conjecture. But it is obviously inequitable to burden the vendee with interest on the entire debt, and give him the benefit only of rents received. Substantial equity is done by charging him no more interest, under the facts of this case, than the rents chargeable to the vendors. More simply stated, charge neither interest nor rents. The error of the court below was in charging the respondents with the rents, and relieving complainant of all interest.

As to taxes paid on the property by respondents prior to 1929, we hold that, having by breach of contract retained title and possession so that the property was lawfully assessable to them, and the taxes were their own obligations, there is no equitable ground to charge same to complainant on accounting. 39 Cyc. 1635, 5 Thomp. on Real Prop. p. 404.

But paving and other betterment assessments, demands not incurred by act of the respondents, but imposed by law, the benefits whereof accrue to complainant, stand on different ground. He should contribute his two thirds of these assessments. There was error in this regard. Repairs made on the building by way of maintenance are the proper burden of the vendors. Indeed, they would be accountable if they had permitted the premises to fall into decay. Pomeroy's Spec. Perf. § 432.

Proceeding to correct the decree by relieving respondents of two-thirds of rents received, and charging complainant with two-thirds of the betterment assessments paid by Mrs. Pearce, it results that the sum of $670.83 should be added to the sum of $10,297.34 decreed to be paid into court by complainant, making a total of $10,968.17, with interest from the date of the decree below, September 16, 1929. Let the costs of appeal be taxed one-half to complainant and one-half to respondents.

As thus corrected, the decree is affirmed.

Corrected and affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### On Rehearing.

Counsel for the parties called the attention of the writer to an error in the original opinion in the recital of facts touching the relation of respondents.

The cause was at once restored to the rehearing docket. While the matter does not go to the merits of the cause, accuracy and propriety suggest a withdrawal of the original opinion and a substitution of a corrected opinion, which is accordingly done.