KENNEDY, Justice.
The plaintiff, Gina Slater Parker, appeals the trial court's summary judgment in favor of the defendants, Charles E. Glazner and others, heirs to a parcel of property. Parker had sought specific performance of a contract for the sale of that property between herself and Glazner as a representative of all the heirs. She argues that material facts are in dispute and that the summary judgment was therefore improper. See Ala.R.Civ.P. 56(c) (stating as a prerequisite to summary judgment, “that there [be] no genuine issue as to any material fact”).
Except as otherwise indicated, the following facts underlying this appeal are undisputed.
In May 1991, Glazner and others owned a house on property located in Mobile that they had, as indicated, acquired as heirs of the deceased prior owner. Glazner, representing all the heirs, undertook efforts to sell the property.
Parker, a resident of New York, decided to move to Alabama; she sought the services of real estate agent Evelyn Anderson in the spring of 1991 for assistance in locating a house. After looking at various proper *375 ties with Anderson, Parker decided to purchase the Glazner property.
With Anderson’s assistance, Parker completed a standard realtor’s form contract as her offer, or “proposed” contract, on the house. Anderson met with Glazner and presented that written offer, which Glazner rejected. Anderson then completed, at Glazner’s request, a second realtor’s contract, incorporating terms dictated by Glaz-ner, as a counteroffer. Glazner signed this proposed contract on May 6, 1991. One term of this proposed contract was that the sale of the property was to be concluded or “closed” by June 1, 1991. Also, as á term of the proposed contract, either party had the right of specific performance. Earnest money was stated in this proposed contract to be $2000.
Anderson presented the proposed contract to Parker for her acceptance or rejection of it as the contract of the parties. Anderson objected to the June 1, 1991, closing date and declined to sign it.
At Parker’s request, Anderson then phoned Glazner. Anderson explained to Glazner that Parker wanted to close on July 15, 1991, and was willing to increase the earnest money from $2000 to $5000. Anderson testified that Glazner orally authorized her to amend his counteroffer by adding the words “closing date to be July 15, 1991.”
Glazner testified that he did not authorize or direct Anderson to so change his proposed contract.
Anderson changed the proposed contract to state a July 15, 1991, closing date. Parker then signed the amended proposed contract. Later, Parker tendered $5000 as earnest money that was to be held in Anderson’s escrow account.
Anderson mailed Glazner a copy of the contract and thereafter telephoned to verify that Glazner had received it, and Glaz-ner acknowledged that he had.
Glazner testified that after he received a copy of this contract in the mail, he observed the alteration of the closing date. He testified that he questioned Anderson about the change several times thereafter and that he told Anderson that “if the financial papers are satisfactory and we determine that her [Parker’s] ability to perform on the contract [is] satisfactory, we also, [will] accept that date.”
Anderson testified that Glazner never objected to the modification of the closing date until three days before the scheduled July 15, 1991, closing.
Anderson further testified that between June 1, 1991 (the original closing date on Glazner’s proposed contract), and July 12, 1991, Glazner spoke with her several times to discuss matters that he needed to attend to in preparation for the July 15 closing and matters that Parker was to attend to prior to closing.
On July 12, 1991, Glazner first advised Anderson that he would not close on the contract.[1]
Parker sued Glazner and the other owners of the house for specific performance of the contract. The defendants moved for and were granted a summary judgment. The trial court determined that “the altered agreement ... was not executed by Glaz-ner. Therefore, it is void. One of the purposes of the Statute of Frauds is to make unenforceable, oral modifications of written agreements.”
As the trial court reasoned, Glazner argues that there was no legally effective contract. Glazner says that his proposed contract was altered after he signed it, and, he says, the alteration modified a material term of the contract. He argues that any contract created upon Parker’s acceptance of the amended proposed contract is invalid because it had been orally modified.
We note that both Glazner and the trial court are incorrect in suggesting that an oral modification occurred. It is undisputed that although Glazner did not re-sign *376 the contract after the modification, the modification made by Anderson was in writing.
Also, until Parker signed the proposed contract, it was only an offer by Glazner. The assumption by Glazner and the trial court that the modification was to a contract, is incorrect. There was only a proposed contract or “offer” at the time of the modification, because, as is undisputed, there had been no acceptance by Parker at the time of the modification. See Shirley v. Lin, 548 So.2d 1329 (Ala.1989) (stating the elements of a contract).
There is no requirement that an offer to purchase real property be either signed or in writing. It is the “agreement” that must be in writing and signed under the Statute of Frauds. See Ala.Code 1975, § 8-9-2.
The question to be addressed here is whether a valid contract can result from a written offer that was modified in writing between the time the offeror signed it and the time the offeree signed it.
Glazner’s arguments are premised on the assumption that a contract rather than an offer was modified, and, thus, he cites no authority relating to this question.
Parker, however, does discuss this matter and cites Pearce v. Third Ave. Improvement Co., 221 Ala. 209, 128 So. 396 (1930). Parker asserts that Pearce stands for the proposition that under such circumstances a valid contract can result.
In Pearce, the purchaser of real property executed a proposed contract. Later, it was tendered to the seller for acceptance or rejection. The seller wished to change some terms of the proposed contract, and a real estate agent, at the seller’s instance, modified certain terms on the face of the contract at the time the seller signed it. Id., 221 Ala. at 212,128 So. 396. Later, the seller complained that the contract was not valid.
The Court stated: “[TJhis contract, modified as [the seller] required, was signed by all the parties named therein, and delivered to the purchaser, who acceded to the changes inserted therein and tendered full performance_” Id., 221 Ala. at 212, 128 So. 396. The Court concluded that “[w]hen vendors execute a contract in their own way and deliver same to the vendee who accepts the contract as it is, the legal status of the transaction is fixed.” Id.
We note that nowhere in the Pearce opinion does the Court state that the purchaser, who had signed the proposed contract before the modification, re-signed that document after the modification, nor did the Court indicate such a specific requirement. Rather, the Court indicated that one whose offer is altered after he or she has signed it, must be shown to have, in some way, acceded to the modification.[2]
We agree with Parker when she argues that Pearce suggests “that a written and signed offer to purchase or sell land can be amended [in writing] before it is accepted by the other party and that the party making the offer does not need to re-sign or initial the amended offer in order to create a valid and enforceable contract.”
Glazner suggests that Pearce is inapplicable because in Pearce the seller could hardly complain that the contract was invalid as modified because it was modified by the seller’s own action. However, the suggestion that Pearce is thus distinguishable assumes that Glazner, as the seller in this case, did not authorize a modification of his proposed contract. This is, as the parties concede, a fact in dispute. If Glaz-ner authorized the modification, then this situation is not different from that in Pearce to the extent that a seller is seeking to renege on a contract on the basis of the seller’s own action.
*377 In sum, a valid contract could have been created in the present ease. The question of whether a valid contract was in fact created is to be resolved by determining whether Glazner acceded to the modification. Whether Glazner did or did not accede to the modification through ratification or agency as is suggested by Parker, is a matter for the trier of fact.
The evidence on this matter is in conflict and, therefore, the summary judgment was improper.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs in the result.
INGRAM, J., dissents.

. According to the parties, Glazner’s stated reason at that time for refusing to close was that he had found financial information about Parker to be unsatisfactory. However, there are no contentions on appeal relating to this matter. Rather, as we will discuss, Glazner argues that there was no valid contract.

. Regrettably, the facts of Pearce are much less than clear. However, the Court in Pearce indicated that the purchaser, whose offer was altered and then signed by the seller, "acceded" to the modification through acting on the proposed contract. The Court discussed the fact that the purchaser had so acted and, tellingly, did not state that the purchaser had re-signed the proposed contract after the alteration. We cannot conclude that such a fact existed but was merely omitted by the Court; such a fact would have certainly figured prominently in its analysis.