**TRI STATE MALL ASSOCIATES, a New York partnership, Plaintiff,**

v.

**A. A. R. REALTY CORPORATION, a Delaware corporation, Defendant.**

Court of Chancery of Delaware, New Castle.

Nov. 17, 1972.

James M. Tunnell, Jr., and David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

William D. Bailey, Jr., of Bayard, Brill & Handelman, Wilmington, for defendant.

SHORT, Vice Chancellor:

This is an action for specific performance of a contract for the sale of land. Pursuant to an order of the court dated July 28, 1971, settlement under that contract was made on August 16, 1971. The court at that time reserved jurisdiction over the question of the alleged obligation of defendant to compensate plaintiff for damages due to delay in settlement and to reimburse plaintiff for counsel fees. This is the decision after trial on those issues.

The agreement of sale under which plaintiff sought and received specific performance and now seeks additional damages and counsel fees was entered into by plaintiff[1] and defendant A.A.R. Realty Corporation (A.A.R.), a Delaware corporation, on May 28, 1971. Under the terms of that agreement A.A.R. agreed to sell plaintiff a shopping center located in Brandywine Hundred, New Castle County, known as "Tri State Mall," subject to a first mortgage to be obtained by A.A.R. from Mutual Insurance Company of New York (MONY) under a then-existing commitment. Of the $9,525,000 total purchase price, $7,100,000 was to be provided by the MONY mortgage, which by its terms would close on the same date set for settlement under the agreement of sale, July 7, 1971, with the balance to be paid in cash. It was also agreed that, simultaneously with settlement, plaintiff would lease the shopping center back to A.A.R. on a long-term basis.

On approximately June 10, 1971, A.A.R. informed plaintiff of the existence of a letter agreement entered into with MONY on March 16, 1971, under which MONY now asserted the right to purchase, concurrently with the closing of the first mortgage, the fee interest in the property for an amount some $925,000 less than that offered by plaintiff. MONY sought to compel A.A.R.'s performance under the "agreement" by threatening to withdraw from its mortgage commitment unless the shopping center property was conveyed to it. Although neither plaintiff nor A.A.R. were of the opinion that A.A.R. was legally obligated under the arrangement with MONY, A.A.R. because of pressing financial obligations considered it imperative that the mortgage close on July 7, 1971, as scheduled. Despite its preference for honoring its agreement with plaintiff, A.A.R. was unwilling to take any action which might jeopardize that mortgage.

When, despite extended negotiations, plaintiff and A.A.R. were unable to reach a satisfactory alternative arrangement for financing, plaintiff filed this suit against both A.A.R. and MONY in an attempt to protect its rights under the agreement of sale. As relief plaintiff sought (1) that A.A.R. be enjoined from selling the property to MONY; (2) that plaintiff have specific performance of its agreement of sale with A.A.R.; (3) that MONY be enjoined from further wrongful interference in plaintiff's contractual and advantageous business relationship with A.A.R.; (4) that MONY close its mortgage commitment with A.A.R.; (5) that plaintiff recover damages including reasonable attorney fees for MONY's wrongful interference with its contract and advantageous business relationship with A.A.R.; and alternatively, (6) that plaintiff be awarded damages incurred by it as a result of A.A.R.'s breach of contract.

On July 2, 1971, an order was entered restraining A.A.R. from conveying title in the property to either plaintiff or MONY pending resolution of the dispute. At that time MONY agreed to honor its mortgage commitment on July 7, 1971. Subsequent to the mortgage closing, A.A.R. and MONY reached a settlement agreement by which MONY agreed to relinquish its claim to the fee interest in the property and an order of dismissal by consent to that effect was entered as to MONY on July 28, 1971. On that same date defendant A.A.R. applied for an order dissolving the temporary restraining order and directing specific performance of the contract with plaintiff.

---

1. The original parties to the agreement of sale were A.A.R. and Arthur J. Phalen, who acted as a nominee for Tri State Mall Associates. Prior to the institution of the present suit, Phalen assigned his right, title and interest in the agreement of sale to HKW Corp., a Delaware corporation, similarly a nominee for Tri State Mall Associates. Immediately prior to actual settlement on August 16, 1971, the agreement of sale was once again assigned; this time to Tri State Mall Associates, subsequently substituted as the party plaintiff in this suit. Because of the identity of their interests, Phalen, HKW Corp., and Tri State Mall Associates will be collectively referred to as "plaintiff" herein.

By agreement of counsel settlement was set for August 16, 1971, and was concluded on that date.

Plaintiff seeks to recover damages for the delay in settlement based upon a breach of contract theory, relying primarily on paragraph 16 in the agreement of sale between plaintiff and A.A.R. under which:

"16. Seller agrees, represents and warrants that:

. . . . . .

(n) All of the Exhibits attached to and made a part of this Agreement are complete and accurate in all respects, there are no leases, contracts, agreements (including employment agreements and collective bargaining agreements) or commitments which pertain to or are applicable with respect to Premises or the other property included in this sale other than those set forth on said Exhibits."

It contends that A.A.R.'s March 16 letter agreement with MONY constituted just such an "agreement" or "commitment" within the meaning of paragraph 16 and that A.A.R.'s warrantee therein amounted to a fraudulent misrepresentation, for which plaintiff is now entitled to damages amounting to the difference between its loss in rentals during the forty-day delay in settlement and the interest actually earned on the balance of the purchase money during the same period.

In the complaint as originally filed, plaintiff did not seek an award of counsel fees against A.A.R. and sought damages against it only as alternative relief to specific performance. However, this Court in its order of July 28, 1971, reserved jurisdiction "with respect to the questions of the alleged obligation for counsel fees and to pay damages to plaintiff." Trial has been had on those issues and I will treat plaintiff's complaint as for all intents and purposes so amended.

Equity may, when its jurisdiction is invoked to obtain specific performance of a contract, award damages or pecuniary compensation along with specific performance when the decree as awarded does not give complete and full relief. 49 Am. Jur., Specific Performance, § 174; Worrall v. Munn, 38 N.Y. 137 (1868). This is an outgrowth of the doctrine that a court of equity, having once assumed jurisdiction on equitable grounds, will adjudicate all matters properly presented by and actually involved in the case. Pomeroy, Equity Jurisprudence, 5th ed., Vol. 5, § 237b; 49 Am. Jur., *supra*. Thus, equity has full jurisdiction, in addition to decreeing specific performance, to award such legal damages as may have resulted from the delay in performance. Pomeroy, Equity Jurisprudence, *supra*. Where the delay is on the part of the vendor, the purchaser is entitled to the rents and profits from the time when, according to the terms of the contract, possession should have been delivered, and the vendor is entitled to a credit for the interest earned by the purchaser on the unpaid purchase money. Bostwick v. Beach, 103 N.Y. 414, 9 N.E. 41 (1886); Sladkin v. Greene, 359 Pa. 528, 59 A.2d 105 (1948); Four-G Corporation v. Ruta, 56 N.J.Super. 52, 151 A.2d 546 (App.Div.1959).

However, the fact that A.A.R.'s failure to disclose to plaintiff on May 28 the existence of the March 16 "agreement" with MONY constituted a misrepresentation amounting to a breach of contract does not in and of itself entitle plaintiff to recover damages for a subsequent delay in performance. The compensation awarded to a purchaser incident to a decree of specific performance is not for breach of contract. By its very nature, a suit for specific performance affirms the contract and seeks that it be enforced. The purchaser is not due both specific performance of the contract and damages for its breach. Pearce v. Third Ave. Improvement Co., 221 Ala. 209, 128 So. 396 (1930); see also Annotation, 7 A.L.R.2d 1204. Rather, the Court in decreeing specific performance will adjust the equities of the parties in such a

manner as to put them as nearly as possible in the same position as if the contract had been performed *according to its terms*. Lombardi v. Laudati, 124 Conn. 569, 200 A. 1019 (1938); Smith v. Owens, 397 P.2d 673 (Okl.1964); Four-G Corporation v. Ruta, *supra*; Pearce v. Third Ave. Improvement Co., *supra*. Specific performance is what the term implies—enforcement of the contract as nearly as may be to accomplish its purpose. Pearce v. Third Ave. Improvement Co., *supra*. Plaintiff is now bound by the terms of that contract and is entitled to no more than it provides.

I am satisfied that, by the terms of the agreement of sale, both parties contemplated a forty-day leeway in the date of settlement during which plaintiff could not rescind and defendant A.A.R. could cure any defect in its performance under the terms of the contract without incurring liability. Defendant A.A.R. had warranted in paragraph 16 that there were no undisclosed "agreements" or "commitments" pertaining to the shopping center property and also that the MONY mortgage commitment was "in good standing and in full force and effect." Under the provisions of paragraph 18:

> "18. All of the obligations of Purchase under this Agreement are subject to and conditioned upon the fulfillment (unless waived in writing by Purchaser) of all of the following conditions precedent:
>
> (a) Seller's representations and warranties contained in this Agreement shall be deemed to have been made again at and as of the time of the title closing, and shall then be true and accurate in all material respects. *Said representations and warranties shall not survive the title closing hereunder,* except paragraph 16(n) . . . [not relevant here].
>
> .    .    .    .    .    .
>
> If any one or more of said conditions precedent shall not have been fulfilled prior to the title closing Purchaser shall have the right to cancel this Agreement

in the manner and upon the terms and conditions provided in paragraph 10 above."

Paragraph 10 provides in relevant part:

> " . . . If Seller shall cure the defect to obtain the removal thereof or obtain insurance against the same within said thirty days, then title shall close, all other conditions herein having been fulfilled, within ten days after notice to Purchaser by Seller, but in any case not later than August 16, 1971 . . . ."

It further provides that in the event A.A.R. was unable to cure the defect, the contract would be terminated without liability of either party to the other, or at plaintiff's option he might take title subject to the defect without any liability on the part of the seller.

■ Looking at these provisions as a whole, it is clear that the intent of the parties was to allow the defendant A.A.R. a reasonable time after the original closing date of July 7 to cure any defect in its performance and that, whether or not it was successful in that effort, it would incur no liability to plaintiff. Plaintiff, having specifically enforced that agreement, is not entitled to compensation for any loss of rentals during a delay in performance permissible under its terms.

■ Plaintiff, however, contends that this contract should not be construed to relieve defendant A.A.R. of its own "blatant fraud." There were no allegations of fraud in the complaint and plaintiff has offered no evidence of any fraudulent intent on the part of A.A.R. to support this contention. But even assuming an element of fraud in A.A.R.'s misrepresentation, plaintiff has elected not to avoid the contract on that basis or to institute an action based on fraud. Rather, it has chosen to enforce the contract in spite of any fraud on the part of A.A.R., and may not therefore raise the issue now.

In support of its application for counsel fees, plaintiff attempts to analogize this

case to that of a stockholder's derivative suit in which a successful plaintiff, having recovered a fund for the benefit of a corporation, is entitled to be reimbursed for its counsel fees by that corporation. Plaintiff contends that the additional $925,000 compensation for the shopping center which A.A.R. received as a result of plaintiff's successful suit for specific performance constituted a "fund" recovered on behalf of a nominal defendant which it would not have had without plaintiff's efforts.

■ The general rule in Delaware is that a litigant must defray the costs of his own counsel. In re Equitable Trust Co., 27 Del.Ch. 60, 30 A.2d 271 (1943); Maurer v. International Re—Insurance Corporation, 33 Del.Ch. 456, 95 A.2d 827 (1953). However, an exception is recognized where a suit by one member of a class results in the creation of a fund that inures to the benefit of all members of the class, as is the case in stockholder's derivative suits and creditor's bills. Maurer v. International Re—Insurance Corporation, *supra.* This exception is based on the principle that those members of the class who share with plaintiff in the benefits of the suit ought to share as well in the burden of its prosecution. R. H. McWilliams, Jr., Co. v. Missouri-Kansas Pipeline Co., 21 Del.Ch. 308, 190 A. 569 (1936).

■ Plaintiff here has not recovered a "common fund" for the benefit of a class of which it is a member; rather it has merely specifically enforced a contract which both parties found financially advantageous, and under which both parties are entitled to their separate rights—plaintiff to the shopping center and defendant to the extra $925,000. And, although defendant A.A.R. took a passive role in this suit, it did incur its own counsel fees. Plaintiff has failed to demonstrate any strong public policy in favor of awarding counsel fees in this instance, nor has it shown that requiring each party to bear its own counsel fees is so inequitable as to constitute a "very special circumstance" as found in Wife, J.B.G. v. Husband, P.J.G., Del.Ch., 286 A.2d 256 (1971).

Plaintiff's application for damages and counsel fees is denied.