COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted:  July 8, 2021
Final Report:   July 27, 2021

Jeffrey M. Weiner, Esquire
Law Offices of Jeffrey M. Weiner, P.A.
1332 King Street
Wilmington, Delaware 19801

Peter K. Schaeffer, Jr., Esquire
Avenue Law
1073 South Governors Ave.
Dover, Delaware 19904

Robert Penza, Esquire
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801

Mark M. Billion, Esquire
Billion Law
1073 South Governors Ave.
Dover, Delaware 19904

*Via U.S. Mail*
Patricia E. Gibbs
3431 S. DuPont Blvd.
Smyrna, Delaware 19977

*Via U.S. Mail*
Lewis H. Pritzkur
2405 Brookshire Drive
Wilmington, Delaware 19803

RE:   *Twin Willows, LLC v. Lewis Pritzkur, Trustee for Patricia E. Gibbs, Dawn R. Ellery, Gwen D. Rinaldi, Patricia E. Gibbs, and Robin Silverman*
C.A. No. 2020-0199-PWG

Dear Counsel:

Pending before me is a complaint in which a buyer seeks an extension of time to complete a land sale agreement and specific performance of that agreement. At a December 15, 2020 status conference in this matter, I questioned *sua sponte* whether the Court of Chancery has subject matter jurisdiction over this matter and could grant equitable relief, considering the agreement's time is of the

essence clause and its expiration.[1] After oral argument and briefing on the jurisdictional issue, I find that this Court has subject matter jurisdiction over this matter. This is a final report.

## I. Background

The origins of this matter start with a petition to partition approximately 81.9 acres located at 3431 South Dupont Boulevard, Smyrna, Delaware ("Property"), which was filed by Dawn Ellery ("Ellery"), Gwen Rinaldi ("Rinaldi"), and Robin Silverman ("Silverman"), who together own a 50% interest in the Property against Patricia Gibbs ("Gibbs"), the other 50% owner of the Property, filed in 2007.[2] On February 25, 2008, the Court appointed Lewis Pritzkur ("Trustee") as trustee over the property and directed him to list the Property for private sale as a whole and to seek the Court's approval of any sale of the property.[3] Eventually, an agreement of sale for the Property ("Agreement") between JMW Investments LLC and the Trustee was signed on September 27, 2016.[4]

---

[1] Docket Item ("D.I.") 25, Tr. 17:4-19:21. Unless otherwise noted, all docket items refer to *Twin Willows, LLC v. Pritzkur*, C.A. No. 2020-0199-PWG (Del. Ch.).

[2] D.I. 1, ¶¶ 2, 3, 5.

[3] *Pritzkur v. Ellery*, C.A. No. 12820-MG (Del. Ch.), D.I. 1, ¶ 14.

[4] D.I. 17, Ex. A [hereinafter "Agreement"].

The Agreement provided that the Buyer (which is now Twin Willows) had a 120-day due diligence period, which began running on the date of court approval.[5] This diligence period required the Buyer to use good faith in not disrupting the activities of the Property's occupants, give 72 hours-notice to the occupants of the Property prior to accessing the Property, and allow the Seller the opportunity to accompany the Buyer onto the Property.[6] At the end of the diligence period, the Buyer had a 24-month period for the permitting process to apply for and obtain all necessary approvals for its intended development of the Property. The Agreement gave the Buyer the option to extend the permitting period for two additional periods of six months each, for an extension fee. If, after using good faith efforts, the Buyer was unable to obtain the requisite permitting, it could either waive the permitting requirements and proceed to settlement or terminate the Agreement.[7] The Agreement also required court approval of the Agreement.[8] Closing was to occur thirty days following the "outside date" or the earlier of the Buyer's receipt of the approvals or the end of the permitting period, with the Buyer delivering the purchase price at settlement.[9] If the contingencies are not satisfied or waived, the

---

[5] Agreement, ¶ 3(a).

[6] *Id.*

[7] Agreement, ¶ 3(b).

[8] Agreement, ¶ 3(d).

[9] Agreement, ¶ 4(a).

Buyer has the option to cancel the Agreement by giving written notice to the Seller by the outside date.[10] Possession of the Property is delivered at settlement.[11] The Agreement has a time is of the essence clause.[12] The Buyer's sole remedies for default by the Seller under the Agreement is to either sue for specific performance or terminate the Agreement and receive back the deposit and extension fees.[13]

The Agreement was approved by the Court on November 14, 2016.[14] The Agreement was assigned to Twin Willows, LLC ("Twin Willows") on March 14, 2017, and the assignment was approved by the Trustee on or before May 15, 2017.[15] The permitting period was extended under the Agreement on March 14, 2019 and again on September 14, 2019.[16] The time allowed for the permitting period lapsed on March 14, 2020.[17]

---

[10] Agreement, ¶ 4(b).

[11] Agreement, ¶ 5.

[12] Agreement, ¶ 10. The time is of the essence provision is qualified by the statement that "neither party shall be in default unless and until it has received written notice of any alleged default and ten (10) days opportunity to cure." *Id.*

[13] *Id.*

[14] D.I. 17, Ex. B.

[15] D.I. 1, ¶ 19.

[16] *Id.*, ¶¶ 26, 27.

[17] *Id.*, ¶ 28.

Plaintiff Twin Willows filed a complaint ("Complaint") on March 13, 2020 seeking specific performance of the Agreement and equitable relief.[18] It asks the Court to declare that the parties have a current, valid, and binding Agreement, to extend the time to complete the contingencies in the Agreement by 18 months, to order Defendants to vacate the Property until the permitting process is complete, and for damages and attorneys' fees and costs.[19]

## II.  Analysis

I consider the issue of whether this Court has subject matter jurisdiction over Twin Willow's claims regarding the Agreement.  "The Court has a duty to determine whether it has subject matter jurisdiction over a plaintiff's claims and can raise the issue *sua sponte*."[20]  "The burden is on the plaintiff to prove subject matter jurisdiction exists."[21]  If Twin Willows has an adequate remedy at law, this Court does not have subject matter jurisdiction over the case.[22]

---

[18] *Id.*

[19] *Id.*, at 11.

[20] *Crown Castle Fiber LLC v. City of Wilmington*, 2021 WL 2838425, at *3 (Del. Ch. July 8, 2021); *see also* Ct. Ch. R. 12(h)(3); *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009) ("The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment and by the court *sua sponte*."), *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013) (TABLE).

[21] *Sun Life Assurance Co. of Canada - U.S. Operations Holdings, Inc. v. Grp. One Thousand One, LLC*, 206 A.3d 261, 265 (Del. Super. 2019).  In this inquiry, the Court may look beyond the pleadings to determine the nature off the claim. *Id.; see Yancey v. Nat'l Trust Co.,* 1993 WL 155492, at *6 (Del. Ch. May 7, 1993) (acknowledging the right of a defendant to challenge a plaintiff's jurisdictional allegations by material

"As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[23] "In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[24] The analysis requires "a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate."[25] It "is based upon the allegations made in the complaint, taken as true; however, a mere allegation that there is no adequate remedy at law is insufficient to end the inquiry if such allegation is a

---

extrinsic to the pleadings). Here, I consider the Agreement in my analysis. Although Twin Willows did not attach the Agreement to the Complaint, the Court of Chancery may consider it for purposes of considering subject matter jurisdiction.

[22] *See Crown Castle Fiber LLC*, 2021 WL 2838425, at *4 ("Equitable relief is unavailable, and so cannot anchor subject matter jurisdiction, where a 'sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.'") (citing 10 *Del. C.* §342).

[23] *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *6 (Del. Ch. Mar. 5, 2021) (citations omitted).

[24] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[25] *Id.* (citation omitted).

mere façade."[26] Where the plaintiff has pled an equitable remedy, such as specific performance, "upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief."[27] "If, after such a practical assessment of the plaintiff's claims, it appears that an adequate remedy at law exists, equitable relief is unavailable."[28]

In its Complaint, Twin Willows pleads three claims. Count I seeks equitable relief, Count II is for specific performance, and Count III claims a breach of contract. All three counts ask for an 18-month extension of time for Twin Willows to complete the permitting process under the Agreement.[29] Although Counts I and III claim that Twin Willows has a right to additional time "under the general

---

[26] *Athene Life & Annuity Co. v. Am. General Life Ins. Co.*, 2019 WL 3451376, at \*4 (Del. Ch. Jul. 31, 2019); *see also Int'l Bus. Machines Corp. v. Comisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991) ("[A] judge in equity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery.").

[27] *Candlewood Timber Grp., LLC*, 859 A.2d at 997.

[28] *Crown Castle Fiber LLC v. City of Wilmington*, 2021 WL 2838425, at \*4 (Del. Ch. July 8, 2021); *see generally Athene Life & Annuity*, 2019 WL 3451376, \*5-6 (analyzing whether an adequate remedy at law is available related to contract disputes).

[29] At the December 15, 2020 hearing, I pointed out that Count I for "Equitable Relief" at first glance appeared to be a claim for reformation. D.I. 25, Tr. 17:9-18. Reformation is an equitable remedy, but under Delaware law, it is a limited remedy that arises out of mutual or unilateral mistake and is used "to reform a contract in order to express the 'real agreement' of the parties involved." *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002). Twin Willows did not argue at the July 8, 2021 hearing, nor in its letter brief, that it was entitled to reformation. *See* D.I. 32. Therefore, I do not address the availability of reformation as an equitable remedy in this case.

principles of equity," those Counts provide no specific basis for the equitable relief requested. Count II, which seeks specific performance, may implicate the Court's equitable jurisdiction under 10 *Del. C.* §341.

I consider whether the complaint discloses a genuine need and basis for specific performance which is sufficient to confer subject matter jurisdiction to the Court of Chancery. Only if the nature of Twin Willows' claims could merit specific performance will this Court have jurisdiction.[30] If not, then Twin Willows has an adequate remedy at law in the form of damages if a breach of contract is proven.

"A party seeking specific performance must establish (1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of the equities tips in favor of the party seeking performance."[31] To receive the remedy of specific performance, the contract must reveal a right to the relief of specific performance.[32] "[R]eal property is unique, and often the law cannot adequately remedy a party's refusal to honor a real property contract."[33] The Agreement is for the sale of land, and the Agreement specifies that the buyer – Twin Willows – may

---

[30] *See generally Candlewood Timber Grp., LLC*, 859 A.2d at 997; *Endowment Rsch. Grp., LLC*, 2021 WL 841049, at *6 (Del. Ch. Mar. 5, 2012).

[31] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[32] *See Potter v. Potter*, 251 A.2d 578, 580 (Del. Ch. 1968).

[33] *CC Fin. LLC v. Wireless Properties, LLC*, 2012 WL 4862337, at *9 (Del. Ch. Oct. 1, 2012).

seek specific performance as a remedy to the seller's breach.[34] Preliminarily, these facts tend to suggest that specific performance may be a possible remedy in this case.

At the December 15, 2020 hearing, I raised the question whether the Court has the power to order specific performance because of the time is of the essence clause and the lapse of the time for performance under the Agreement.[35] Because of the lapse of contractual provisions without performance, I questioned whether the remedy was not specific enforcement but money damages.[36]

Twin Willows filed a letter briefing in which it argues that it was prevented from completing the permitting process because of Gibbs' actions frustrating Twin Willows' representatives' access to the Property, and the Trustee's failure to take "effective steps to rein Ms. Gibbs in."[37] In its letter briefing and at oral argument, Twin Willows relied heavily on Vice Chancellor Laster's remedies opinion in *In re Oxbow Carbon LLC Unitholder Litig.* ("*Oxbow*").[38] Twin Willows asserts that this opinion stands for the proposition that once it is determined that equitable relief is appropriate, equity has the power to fashion an appropriate remedy – such as to

---

[34] Agreement, ¶ 10.

[35] D.I. 25, Tr. 19:1-21:12.

[36] D.I. 25, Tr. 26:23-27:4.

[37] D.I. 32, at 2.

[38] 2018 WL 3655257 (Del. Ch. Aug. 1, 2018).

extend the Agreement's deadlines in this instance – "in the absence of explicit contractual authority to do so."[39]

On June 22, 2021, Ellery, Rinaldi and Silverman responded to Twin Willows' letter, alleging that Twin Willows' claim for equitable relief and specific performance should be dismissed because the Agreement has expired, Twin Willows has not shown it is able to perform and close on the Property, the balance of equities does not tip in Twin Willows' favor, and *Oxbow* is inapplicable.[40] The Trustee asserts that time was of the essence and Twin Willows was not ready, willing and able to close the transaction within the Agreement's specified time frames.[41] He cites to the Court's reliance, in *Snow Phipps Group, LLC v. KCake Acquisition, Inc.* ("*Snow Phipps*"),[42] on *Osborn v. Kemp*, in which the Delaware

---

[39] D.I. 32, at 3-4. Because Vice Chancellor Laster's *Oxbow* remedies opinion has been specifically vacated by the Supreme Court, I decline to solely rely on the *Oxbow* opinion in reaching my conclusion in this matter. *See Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition LLC*, 202 A.3d 482, 509 (Del. 2019); *see also Glazer v. Pasternak*, 693 A.2d 319, 321 (Del. 1997) (holding that, where a trial court's decision is vacated, "it will have no impact on future law").

[40] D.I. 33.

[41] D.I. 34.

[42] 2021 WL 1714202, at *55 (Del. Ch. Apr. 30, 2021). The Trustee refers to Twin Willows' argument that their alleged breach by non-performance is excused because Gibbs' behavior materially contributed to Twin Willows' non-performance as the "prevention doctrine." D.I. 34, at 5. "The prevention doctrine provides that where a party's breach by nonperformance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." *Snow Phipps*, 2021 WL 1714202, at *52 (internal quotation marks and citations omitted); *see also Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *19 (Del. Ch. Feb. 27, 2020) ("The 'prevention doctrine' provides that a party may not escape contractual liability by

Supreme Court affirmed the Court of Chancery's grant of specific performance and of a reasonable time for the parties to conclude the land transaction, recognizing that the "contract does not include a 'time is of the essence' clause."[43]

Here, the Agreement has a time is of the essence clause.[44] Delaware courts will generally give substantial weight to these provisions.[45] "It is fundamental law that a party seeking a decree for specific performance of a contract must, himself, have performed within the time specified [for] his own obligations under the contract. It is, however, equally fundamental that a failure of a plaintiff to have

---

reliance upon the failure of a condition precedent where the party wrongfully prevented performance of that condition precedent.") (citations omitted). In *Snow Phipps*, the parties stipulated that the seller's right to specific performance was conditioned upon full funding of buyer's debt financing. *Snow Phipps*, 2021 WL 1714202, at *51. The buyers argued that, because debt financing was not in place, the condition had not been met and specific performance was barred. *Id.* at *52. Applying the prevention doctrine, the Court "deem[ed] the debt financing condition met because the buyers contributed materially to lack of debt financing by breaching their reasonable-best-efforts obligation." *Id.*, at *2. At this juncture, I do not need to decide whether the prevention doctrine applies in this case. I note, however, that the Agreement does not condition specific performance on obtaining all necessary approvals; if approvals are not obtained, the Agreement provides that the buyer has the choice of waiving the approvals and proceeding to settlement or terminating the Agreement. *See* Agreement, ¶¶ 3(b), 10.

[43] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1161 (Del. 2010).

[44] Agreement, ¶ 10.

[45] *See Penden v. Gray*, 886 A.2d 1278, 2005 WL 2622746, at *3 (Del. Oct. 14, 2005) (TABLE) (enforcing a time is of the essence provision to decline specific performance of a contract for the purchase of real estate); *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *9 (Del. Ch. May 2, 2007) ("When time is of the essence in a contract, a failure to perform by the time stated is a material breach of the contract.").

performed his own obligation will be excused if he was prevented by the other party from performing his obligation."[46]

Twin Willows alleges that Defendants' misconduct prevented it from performing its obligations under the contract. Accordingly, it posits a possible equitable remedy of specific performance, despite the time is of the essence clause.[47] To obtain specific performance, however, Twin Willows will have to prove Defendants' misconduct, that their actions prevented Twin Willows from performing under the contract, and that it could have performed under the Agreement on a timely basis if the alleged misconduct had not occurred. At this

---

[46] *Wells v. Lee Builders, Inc.*, 99 A.2d 620, 621 (Del. 1953)*; see also Thompson v. Burke*, 1985 WL 165736, at *3 (Del. Ch. June 7, 1985) ("[generally,] the plaintiff must have performed those obligations within the specified time, unless prevented from doing so by the defendant"); *Walton v. Beale*, 2006 WL 4763946, at *6 (Del. Ch. Jan. 30, 2006) ("If [time is of the essence and] the defendants' actions cause the plaintiff to fail to meet the contractual settlement date, the plaintiff will not be held liable for the breach induced by the defendants"); *Marvel v. Conte*, 1978 WL 8409, at *3 (Del. Ch. Oct. 24, 1978); *Charamella v. Barley Mill Rd. Homes, Inc.*, 142 A.2d 515, 517 (Del. Ch. 1958); *Morgan v. Wells*, 80 A.2d 504, 506 (Del. Ch. 1951) ("It is fundamental that where the time of performance is expressly made of the essence of a contract, a plaintiff must have performed his part of the contract within the specified time if he is to be entitled to specific performance. The requirement of performance on the part of a plaintiff as a condition precedent to the granting of specific performance is modified, however, . . . when the defendant has prevented the plaintiff from performing his obligations.").

[47] I do not consider this matter based upon the standards that apply for summary judgment or similar motions, or at trial where the Court considers evidence on the merits.

juncture, it is not evident whether specific performance will, ultimately, be warranted in this case.[48]

## III.    Conclusion

For the reasons set forth above, I find that this Court has subject matter jurisdiction over Twin Willows' claims and allow this case to proceed. This is a final Master's report and exceptions may be taken under Court of Chancery Rule 144. I ask counsel to submit, within 10 days after this report has become final, a proposed scheduling order that will allow this dispute to be resolved as expeditiously as possible.

Sincerely,

/s/ Patricia W. Griffin
Patricia W. Griffin,
Master in Chancery

---

[48] In addition, specific performance is the "enforcement of the contract as nearly as may be to accomplish its purpose." *Tri State Mall Assocs. v. A. A. R. Realty Corp.*, 298 A.2d 368, 372 (Del. Ch. 1972). If specific performance is granted, Twin Willows may be entitled to the benefit of its bargain.