# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 13, 2025

William B. Larson, Jr., Esquire
Jalen S. Frantal, Esquire
Manning Gross + Massenburg LLP
1007 N. Orange Street, Suite 711
Wilmington, Delaware 19801

Beachy Keen Services, LLC
c/o Michael Friedrich
7 Rockford Road, D5
Wilmington, Delaware 19806

RE:  *Madeline O'Connor and Patrick Cullen v. Beachy Keen Services, LLC*,
C.A. No. 2024-1345-LWW

Dear Counsel and Mr. Friedrich:

This action concerns defendant Beachy Keen Services, LLC's refusal to abide by a contract to sell real estate. The parties entered into an agreement for the sale of a home owned by the defendant, which had purchased the property to flip it but ran out of funds. When the time came to close, the defendant and its principal vanished.

This lawsuit followed. After an expedited trial, I conclude that specific performance is appropriate. Judgment is entered in the plaintiffs' favor.

## I.      BACKGROUND

The following facts are drawn from the evidentiary trial record and the allegations in the plaintiffs' complaint, which are deemed admitted due to the defendant's default.[1]

### A.      The Property

Defendant Beachy Keen Services, LLC is a New York limited liability company. Its registered agent and principal is Michael Friedrich, who maintains an address in Wilmington, Delaware. Beachy Keen is involved in residential house flipping.[2] It owns a vacant property located at 2106 North Bancroft Parkway in Wilmington (the "Property").

---

[1] The plaintiffs' pre-trial brief seeks a default judgment against the defendant. Dkt. 21 at 13. Service of the complaint was unsuccessfully attempted on Beachy Keen's registered agent, Michael Friedrich, five times over eight days. Dkt. 10 Ex. A. Friedrich is also the principal of Beachy Keen who signed the agreement of sale at issue in this case. Service was, however, perfected on the Secretary of State through hand delivery on January 9, 2025. *See* Dkt. 10 Ex. B; Dkts. 11-13; 6 *Del. C.* § 18-910; *see also T.A.H. First, Inc. v. Clifton Leasing Co., Inc.*, 35 A.3d 420 (Del. 2011) (TABLE). The plaintiffs and their counsel also tried to contact the defendant in numerous ways: through his realtor, social media, calls to cell and office phones, and faxes. There was never a response. Beachy Keen is in default. *See* Ct. Ch. R. 55(b). The allegations in the complaint are therefore deemed admitted. *See Hauspie v. Stonington P'rs, Inc.*, 945 A.2d 584, 586 (Del. 2008). At trial, I heard live testimony and reviewed documentary evidence that confirm the plaintiffs' allegations and support the findings of fact made in this decision.

The plaintiffs' trial exhibits are cited as "PX __." Trial testimony is cited as [Witness] Tr. __." Dkt. 24.

[2] Dkt. 1 ("Compl.") ¶ 42.

Plaintiffs Madeline O'Connor and Patrick Cullen are a married couple living in Philadelphia, Pennsylvania.[3] Both native Delawareans, they plan to relocate to their hometown with their young child.[4] They have targeted Wilmington's Highlands neighborhood—a historic residential section of the city that is walkable to parks, restaurants, and cultural attractions.[5]

After touring the Property, the plaintiffs decided that it was the "perfect" home for their family.[6] They decided to make an offer, and they hoped to settle quickly.[7]

## B. The Agreement of Sale

Beachy Keen listed the Property for sale on June 15, 2024 at a price of $649,999.[8] After a series of price reductions, the plaintiffs submitted an offer of $550,000 on October 30.[9] Beachy Keen accepted this offer on November 4 by signing an Agreement of Sale (the "Agreement").[10]

---

[3] *Id.* ¶¶ 5-6.

[4] *Id.* ¶¶ 13-14.

[5] *Id.* ¶ 18; *see* O'Connor Tr. 5-6.

[6] O'Connor Tr. 6-7.

[7] *Id.* at 8.

[8] Compl. ¶ 19.

[9] *Id.* ¶ 28.

[10] *Id.*; PX 1 (Agreement of Sale of the Property); *see* Barone Tr. 20.

The plaintiffs made a $10,000 earnest money deposit, obtained lender approval for mortgage financing, and met all other contingencies in the Agreement.[11]

## C.    The Failed Closing

Closing on the Property was set for November 26, 2024. The plaintiffs prepared to move. They bought appliances for their new kitchen, reached an agreement with their landlord to break their lease early, booked movers, and packed up their apartment.[12] They rented moving supplies.[13] They also began to pay heating bills for the Property to prevent pipe damage during the cold winter months since Beachy Keen had stopped making payments.[14]

But just before November 26, the law firm handling the closing told the plaintiffs that Friedrich was non-responsive and failed to return needed documentation.[15] The closing was canceled.[16] The plaintiffs made multiple attempts to contact Friedrich and his associates, friends, and family by phone, email, and social media.[17] Their efforts were unsuccessful.

---

[11] Compl. ¶¶ 29, 30.

[12] O'Connor Tr. 10.

[13] PX 2 (utility bills); *see* Cullen Tr. 14-15.

[14] PX 3 (payment receipts); *see* Cullen Tr. 16.

[15] O'Connor Tr. 11; Compl. ¶ 34.

[16] O'Connor Tr. 11; Compl. ¶ 35.

[17] O'Connor Tr. 11; Compl. ¶ 36.

D.     The Aftermath

Friedrich's disappearing act exacerbated an already stressful season for the plaintiffs. They had expedited their plans to move to Wilmington after a home invader burglarized their Philadelphia apartment.[18] And the Property—with its historic character and proximity to family—seemed like the ideal place to settle.[19] The plaintiffs' plans went awry when their closing was canceled. When it became clear that Friedrich "was not going to resurface," they decided to pursue litigation.[20]

E.     This Action

On December 27, 2024, the plaintiffs filed a complaint in this court seeking specific performance of the Agreement, among other relief.[21] They moved for expedited proceedings, which I granted.[22] Despite having notice, Beachy Keen failed to appear at the motion to expedite hearing.[23] It has never appeared in this case despite being properly served and contacted in multiple ways.[24]

---

[18] Compl. ¶ 17.

[19] *Id.* ¶¶ 18, 22-26.

[20] O'Connor Tr. 11-12; *see* Compl. ¶ 36.

[21] Dkt. 1.

[22] Dkt. 2.

[23] *See* Dkt. 6.

[24] *See supra* note 1.

Trial was held on March 3, 2025.[25]  The plaintiffs and their real estate agent testified live at trial.[26]

## II.  ANALYSIS

The plaintiffs seek relief under a breach of contract theory.  Their primary request is for specific performance of the Agreement.  They also request an award of incidental damages caused by Beachy Keen's breach of the Agreement and their fees and costs in this litigation.  They have asked that, if necessary, a special magistrate be appointed to effectuate the transfer of title to the Property.

The plaintiffs have proved their claim and entitlement to these remedies.

### A.  Breach of Contract

To prove a breach of contract, the plaintiffs must demonstrate (1) the existence of a contract, (2) the breach of an obligation imposed by the contract, and (3) resulting damages.[27]  Each element is demonstrated here.

#### 1.  Contract

A valid contract is formed when "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the

---

[25] Dkt. 16.

[26] Dkt. 22.

[27] *See Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009).

parties exchange legal consideration."[28]

The parties indicated their intention to be bound when they signed the Agreement. The terms of the Agreement are sufficiently definite and based on a standard form of contract for the sale of residential real estate in Delaware.[29]

The parties also exchanged legal consideration. Beachy Keen promised to transfer the Property to the plaintiffs. The plaintiffs promised to pay an initial deposit and obtain mortgage financing to complete the sale.

The plaintiffs performed their obligations. Beachy Keen did not.

2.     Breach

Beachy Keen breached the Agreement on November 26, 2024 when it neglected to close and deliver title and possession of the Property to the plaintiffs.[30] The Agreement obligated Beachy Keen to attend closing as scheduled unless the parties "expressly agreed" that "a longer time [wa]s necessary" to prepare for settlement.[31] Beachy Keen failed to communicate with the plaintiffs at all—let alone

---

[28] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[29] *See* PX 1.

[30] Compl. ¶ 35; *see generally PAMI–LEMB I Inc. v. EMB–NHM, L.L.C.*, 857 A.2d 998, 1014 (Del. Ch. 2004) ("A repudiation of a contract is an outright refusal by a party to perform a contract or its conditions.") (citation omitted).

[31] PX 1 at 2.

request an extension.  By refusing to transfer the Property by the deadline fixed by the Agreement, Beachy Keen did not hold up its end of the bargain.

### 3. Damages

The plaintiffs suffered harm from Beachy Keen's breach of the Agreement. They have been deprived of the home they chose and contracted to purchase.  They have also been met with unanticipated complications.  For example, they were caused to unnecessarily break the lease on their Philadelphia rental property.[32]  They incurred expenses, such as moving supply rentals and the Property's utility bills.[33] This is a non-exhaustive list of the plaintiffs' damages.

## B. Specific Performance

The plaintiffs seek specific performance of the Agreement.  They lack an adequate remedy at law. [34]  The Agreement—a contract for the sale of real property—"is the quintessential contract for which specific performance is

---

[32] Compl. ¶ 27.

[33] *Id.* ¶ 32; *see* Cullen Tr. 14.

[34] *See White v. Russell*, 2023 WL 3191746, at *7 (Del. Ch. May 2, 2023) (citing *Osborn*, 991 A.2d at 1158) ("Specific performance is only available if there is no adequate remedy at law.").

available."[35]  "[S]pecific performance of a real estate sale contract is often the only adequate remedy for a breach by the seller, except in rare circumstances."[36]

To obtain specific performance, the plaintiffs must demonstrate by clear and convincing evidence that "(1) a valid contract exists, (2) [they are] ready, willing, and able to perform, and (3) that the balance of equities tips in favor of [the movant]."[37]  Each of these elements was proven by the plaintiffs.  The first element was addressed above.  The remainder are considered below.

### 1. Ready, Willing, and Able to Perform

The plaintiffs stand ready, willing, and able to perform the Agreement.[38] They possess the funds to purchase the Property after placing $10,000 in escrow, setting aside a down payment, and securing mortgage financing for the balance of the purchase price.[39]  They satisfied all contingencies in the Agreement.[40]  They are simply waiting for Beachy Keen to execute the necessary documentation and transfer title and possession of the Property to them as promised.

---

[35] *Morabito v. Harris*, 2001 WL 1269334, at *3 (Del. Ch. Oct. 10, 2001).

[36] *Szambelak v. Tsipouras*, 2007 WL 4179315, at *7 (Del. Ch. Nov. 19, 2007).

[37] *Osborn*, 991 A.2d at 1158.

[38] *Id.* at 1161; *see also Morabito*, 2001 WL 1269334, at *3 ("The plaintiff currently has a financing commitment in place and stands ready, willing and able to complete the purchase of the property.").

[39] Compl. ¶¶ 27, 29.

[40] *Id.* ¶ 30.

### 2. Balance of the Equities

"In balancing the equities for specific performance, the Court must consider whether 'specific enforcement of a validly formed contract would cause even greater harm than it would prevent.'"[41] "Equitable defenses are available to the breaching party, including an examination of the benefit which will accrue to the plaintiff upon consummation of the contract, the detriment to the defendant upon the same circumstance, and the conditions under which the defaulting party found itself in breach."[42] This analysis "reflect[s] the traditional concern of a court of equity that its special processes not be used in a way that unjustifiably increases human suffering."[43]

Here, the equities heavily favor the plaintiffs.

After living through a traumatic home invasion, the plaintiffs were eager to move back to Wilmington.[44] They found the perfect home in the Highlands neighborhood.[45] The Property is unique and satisfied their wants and needs. They

---

[41] *White*, 2023 WL 3191746, at *7 (citing *Hastings Funeral Home, Inc. v. Hastings*, 2022 WL 16921785, at *8 (Del. Ch. Nov. 14, 2022)).

[42] *Morabito*, 2001 WL 1269334, at *3.

[43] *Morabito v. Harris*, 2002 WL 550117, at *2 (Del. Ch. Mar. 26, 2002) (citation omitted); *see also Walton v. Beale*, 2006 WL 265489, at *7 (Del. Ch. Jan. 30, 2006), *aff'd*, 913 A.2d 569 (Del. 2006).

[44] Compl. ¶ 17.

[45] *Id.* ¶ 18.

reached a binding contract to purchase the Property and satisfied all contingencies in the Agreement.[46]  But Beachy Keen jilted them.[47]

I have no reason to believe that Beachy Keen will be harmed by an order of specific performance.  It appears to be in financial trouble.  The Property is the subject of a pending sheriff's sale action in Superior Court.[48]  The plaintiffs' counsel represented at trial that other properties associated with defendant are in foreclosure.[49]  And Beachy Keen, which is presumably experienced with real estate contracts given its line of work, chose to put the Property on the market.[50]  And it chose to accept the plaintiffs' offer and sign the Agreement, with the guidance of a licensed realtor.[51]  It had ample opportunity to tell its side of the story to this court. It has chosen not to.

In addition, the Property's lender seems supportive of the sale going forward. The plaintiffs have an agreement in principle with the lender on satisfaction of the mortgage that currently encumbers the Property.[52]

---

[46] *Id.* ¶¶ 29-30.

[47] *Id.* ¶ 35.

[48] *See Velocity Com. Cap. v. Beachy Keen, et al*, C.A. N24L-09-009-PRW (Del. Super.).

[49] Trial Tr. 21-22.

[50] *See* Compl. ¶¶ 41-44.

[51] Trial Tr. 19-20.

[52] Cullen Tr. 16-17.

Equity must right this wrong. The plaintiffs demonstrated that specific performance is warranted. That relief is granted.

## C. Incidental Damages

The plaintiffs also seek certain incidental damages for costs they have incurred from the breach of the Agreement. This court may "award damages or pecuniary compensation along with specific performance when the decree as awarded does not give complete and full relief."[53] "[E]quity had full jurisdiction, in addition to decreeing specific performance, to award such legal damages as may have resulted from the delay in performance."[54]

The damages sought are modest. They include the costs of renting moving equipment ($383.85) and activating utilities ($754.91).[55] Both sets of costs stem from Beachy Keen's breach. The plaintiffs are entitled to recover these amounts.[56]

---

[53] *Tri State Mall Assocs. v. A. A. R. Realty Corp.*, 298 A.2d 368, 371 (Del. Ch. 1972) (citing 5 John Norton Pomeroy, Pomeroy's Equity Jurisprudence § 237(b) (5th ed. 1941)).

[54] *Id.*

[55] Compl. ¶ 32; *see* PX 2, 3.

[56] I decline to award incidental damages beyond the moving equipment and utility expenses identified in the plaintiffs' pre-trial brief. *See* Dkt. 21 at 12. No other damages were sought at trial.

### D. Attorneys' Fees

The plaintiffs also seek their attorneys' fees and expenses from this litigation. The Agreement includes a prevailing party provision.[57] It states that "[i]n the event any dispute arises under this Agreement between Seller and Buyer[s] resulting in any litigation, and/or arbitration, Buyer[s] or Seller, whichever is unsuccessful, shall also be liable for the other parties' court costs and attorney fees."[58]

The plaintiffs have prevailed in this litigation. They are entitled to their reasonable attorneys' fees and costs under the Agreement.

## III. CONCLUSION

Judgment is entered for the plaintiffs. Specific performance is granted. Barring any complications with the lender of the current mortgage on the Property, title and possession must be transferred to the plaintiffs within ten days of this decision.

Plaintiffs' counsel must also attempt to serve a copy of this decision on Beachy Keen and Friedrich immediately so that Beachy Keen has an opportunity to comply with it. Given Beachy Keen's absenteeism, however, a special magistrate

---

[57] PX 1 ¶ 27; *see Bako Pathology LP v. Bakotic*, 288 A.3d 252, 281 (Del. 2022) (discussing the enforcement of a prevailing party fee shifting provision).

[58] PX 1 ¶ 27.

will likely need to be appointed to effectuate the sale.[59]  By March 20, 2025, the plaintiffs' counsel is asked to file a status update about (1) his negotiations with Beachy Keen's lender on the sale of the Property and (2) whether Beachy Keen has been responsive.  If any remaining issues with the lender are resolved and Beachy Keen remains absent, counsel is asked to include a proposed order appointing a special magistrate to complete the sale on Beachy Keen's behalf.

Incidental damages and attorneys' fees and costs are also awarded to the plaintiffs, as outlined above.  The plaintiffs' counsel is to submit an affidavit detailing these fees and costs after closing, along with a proposed order regarding the damages and fees.

IT IS SO ORDERED.

---

[59] 10 *Del. C.* § 373 ("In all cases where the Court of Chancery orders the execution of any conveyance, assignment, release, acquittance or other instrument and the party against whom the judgment is made does not comply therewith within the time mentioned in the judgment, the Court may appoint a Magistrate for such purpose.").