**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 22, 2026
Date Decided: February 6, 2026

Raymond J. DiCamillo, Esq.
Susan Hannigan Cohen, Esq.
Danielle I. Bell, Esq.
Daniel M. Boucot, Esq.
Richards, Layton & Finger, P.A.
920 N. King St.
Wilmington, DE 19801

Garrett B. Moritz, Esq.
S. Reiko Rogozen, Esq.
Marguerite A. O'Brien, Esq.
Ross Aronstam & Moritz LLP
1313 N. Market St., Ste. 1001
Wilmington, DE 19801

> RE: *Eller Associates Inc., et al. v. SRP Capital Advisors LLC, et al.*,
> C.A. No. 2025-1095-BWD

Dear Counsel:

I write to resolve eight points of disagreement that the parties have raised in connection with their competing forms of order implementing the Court's ruling on Plaintiffs' Motion for Partial Summary Judgment (the "Implementing Order").

As you know, at the conclusion of a December 19, 2025 hearing on Plaintiffs' Motion for Partial Summary Judgment on Count IV of their Verified Complaint (the "Motion"), the Court issued an oral ruling granting the Motion (the "Ruling").[1] As explained in the Ruling, defendant SRP Capital Advisors LLC, which does business

---

[1] The Court refers interested readers to the full text of the Ruling for additional background and context. *See* Tr. of 12-19-25 Oral Arg. and Rulings of the Court on Pls.' Mot. for Partial Summ. J. [hereinafter Tr.], Dkt. 63.

as Stronghold Resource Partners ("Stronghold"), is a Texas-based investment manager that focuses on leveraging technology to identify and invest in oil, gas, and mineral assets. Tr. at 74. Beginning in 2017, plaintiffs Eller Associates Inc., Eller International Inc., Eller 2 Associates Inc., Eller 2 International Inc., and Elliott Investment Management (collectively, "Plaintiffs") made a series of investments in Stronghold projects. *Id.* Among those projects, Plaintiffs invested $18 million to acquire a 16% interest in SRP Opportunities II, LP ("SRP II"), a Delaware limited partnership formed to buy and sell oil, gas, and mineral interests. *Id.* Plaintiffs later invested another $79 million in SRPO-II Partners I, LP ("Sidecar," and with SRP II, "Fund II"), a Delaware limited partnership formed to provide additional capital for SRP II's investments. *Id.* at 74–75. Through these investments, Plaintiffs acquired approximately 47% of the interests in Fund II. *Id.* at 75.

In 2022, for disputed reasons, the parties' relationship broke down. *Id.* at 76. On August 10, Plaintiffs and Stronghold, along with other signatories, entered into a Confidential Settlement Agreement (the "Settlement Agreement") "to provide for an orderly termination of the relationship between [Stronghold] and [Plaintiffs]." Transmittal Aff. of Garrett B. Moritz in Connection with Defs.' Answering Br. in Opp'n to Pls.' Mot. for Partial Summ. J., Ex. 1 [hereinafter Agt.] at 1–2, Dkt. 18. Section 7(a) of the Settlement Agreement requires as follows:

As to SRP II and [Sidecar], the Parties agree that the SRP Parties will (or will cause their applicable Affiliate to):

    i. Promptly begin to seek to sell all remaining assets;

    ii. Sell all assets to third parties by December 31, 2023, subject to an extension on a quarter by quarter basis, but not past December 31, 2024, if an AmLaw 100 firm not previously retained by any of the SRP Parties or any of their Affiliates provides a written opinion to the applicable Elliott Parties that the SRP Parties would be violating their fiduciary duties by effectuating such sales; and

    iii. Promptly distribute proceeds from sales of any assets no later than 30 days following receipt of the applicable proceeds from such sale unless otherwise agreed to by [Plaintiffs] in writing, in each case, pursuant to and subject to the terms of the applicable governing agreements of the applicable entity (e.g., the right to pay expenses and set aside appropriate reserves for anticipated liabilities).

Notwithstanding the foregoing, the SRP Parties[] shall not be required to effect sales of assets in a manner that they reasonably determine in good faith (upon written advice of reasonably qualified investment funds counsel) would be reasonably likely to result in a violation of applicable fiduciary or investment adviser duties owed to a fund effecting such sales or to such a fund's investors with respect to their investment in such fund. The SRP Parties shall use reasonable best efforts to effect the sales prior to the end of the required time periods in a manner compliant with such fiduciary or investment adviser duties and, in the event of delay, shall use reasonable best efforts to effect the

> applicable sales as soon as practicable in compliance with such fiduciary or investment adviser duties.

*Id.* § 7(a).

Despite Section 7(a) of the Settlement Agreement, Stronghold did not liquidate Fund II by December 31, 2023, nor did it provide Plaintiffs with a written opinion from an AmLaw 100 firm opining that effectuating the asset sales would violate Stronghold's fiduciary duties. Tr. at 78. Nor did Stronghold liquidate Fund II by December 31, 2024. *Id.* Instead, Stronghold determined that "market conditions were not favorable for a rapid sell-down of assets of the portfolio companies of Fund II" and therefore continued pursuing what it believed to be "the optimal risk-adjusted return." *Id.* at 78–79.

In the Ruling, the Court concluded that, on those facts, the "undisputed record here establishes that [D]efendants have breached Section 7(a) of the [S]ettlement [A]greement by failing to sell Fund II's remaining assets." *Id.* at 82. The Ruling rejected Defendants' argument that Section 7(a) "gives Stronghold the discretion to reasonably determine in good faith that indefinitely delaying all asset sales is appropriate if continuing to operate would better maximize value for Fund II's limited partners." *Id.* at 84. The Ruling further explained:

> [Section 7(a)] contemplates the possibility that the general partner's duties may require that certain assets be sold in a particular manner that

could result in some delay. In that case, [D]efendants still must use reasonable best efforts to effect the applicable sales as soon as practicable.

But th[e] sentence [in Section 7(a) beginning "Notwithstanding"] cannot reasonably be read to permit [D]efendants to operate in the ordinary course rather than selling down assets if they determine that market conditions are better for buying than for selling. While Section 7(a) contemplates a scenario in which [D]efendants may avoid a particular manner of sale—such as a fire sale—consistent with their duties, by its plain language, Section 7(a) does not permit Stronghold to delay all asset sales indefinitely and instead pursue whatever course it believes will result in the "optimal risk-adjusted return" for investors.

Not only is [D]efendants' position here unsupported by the plain language of the contract; it is contrary to the parties' intent, as reflected in the contract, to provide for an orderly termination of the parties' relationship. If [D]efendants have the discretion to decide that it is more value-enhancing to continue to operate than to wind down, then the very purpose of the agreement is thwarted.

Defendants' reading of the contract also would lead to absurd results, because if [D]efendants are correct that the "Notwithstanding" language in Section 7(a) permits them to choose a different value-maximizing strategy instead of selling all assets, then the obligation and deadlines to sell assets in Section 7(a)(i) through (iii) would be rendered entirely illusory.

*Id.* at 84–86. Turning to remedy, the Ruling concluded that "an order requiring [D]efendants to specifically perform their obligations under Section 7 of the [S]ettlement [A]greement" was warranted. *See id.* at 88, 92.

After meeting and conferring on the Implementing Order for the Ruling, the parties submitted five letters raising eight disputed issues for resolution. The

remainder of this letter addresses the issues as they arise in the parties' competing forms of the Implementing Order.

First, the parties disagree on whether the Implementing Order should require some or all Defendants to specifically perform their obligations under Section 7(a) of the Settlement Agreement. Plaintiffs argue that because "all Defendants other than the nominal defendants and SRP Capital Advisors LLC are signatories to the Settlement Agreement and agreed to the winddown provision," the Implementing Order should cover all Defendants. Pls.' Jan. 14 Ltr. at 8, Dkt. 71. Defendants respond that Defendants who lack control over Fund II should not be bound. Defs.' Jan. 14 Ltr. at 2, Dkt. 70.

The purpose of the Implementing Order is to specifically enforce the Settlement Agreement.[2] Section 7 of the Settlement Agreement states that "*the SRP Parties* shall sell the assets of SRP II [and] [Sidecar] . . . and wind down each of the entities." Agt. § 7 (emphasis added). The "SRP Parties" in the Settlement Agreement that are named as Defendants in this action include SRP Pontiac

---

[2] *See Del. State Troopers' Lodge Fraternal Ord. of Police, Lodge No. 6 v. State*, 1984 WL 8217, at *6 (Del. Ch. June 13, 1984) ("[T]he Court is required to limit the remedy of specific performance to the rights created by the contract."); *Tri State Mall Assocs. v. A.A.R. Realty Corp.*, 298 A.2d 368, 372 (Del. Ch. 1972) (finding movant "entitled to no more than [the contract] provides").

Management Services, LLC; SRP Mercury Management Services, LLC; Ryan A.

Turner; RAT Mercury A Holdings, LLC; RAT Pontiac A Holdings, LLC; RAT

Mercury B Holdings, LLC; RAT Pontiac B Holdings, LLC; Ford Mineral

Acquisitions, LLC; SRP Pontiac Employee Holdings LLC; and SRP Mercury

Employee Holdings LLC.  *Id.* at 1.  The Implementing Order will cover those

Defendants.

Second, the parties define the "Assets" to be sold under the Implementing

Order in two different ways.  Plaintiffs define the "Assets" to include the assets of

portfolio companies owned by Fund II, which include the underlying "oil and gas

mineral rights and leaseholds," while Defendants define the "Assets" to mean equity

interests or securities in Fund II's portfolio companies.  Defs.' Jan. 14 Ltr., Ex. A

§ 5; *contrast* Pls.' Jan. 14 Ltr. at 5–6 (defining "Assets" to include the underlying

assets), *with* Defs.' Jan. 14 Ltr. at 2–3 (defining "Assets" to include the portfolio

company "equity interests or securities").

Section 7 of the Settlement Agreement requires the SRP Parties to "sell the

*assets of SRP II* [and] [*Sidecar*] . . . and wind down each of the entities."  Agt. § 7

(emphasis added).  SRP II and Sidecar own equity interests or securities in portfolio

companies; thus, those are the "Assets" that must be sold.  The Implementing Order

will not expand the terms of the Settlement Agreement to require the sale of assets owned by portfolio companies whose members are not parties to this litigation.

Third, the parties disagree about whether third parties affiliated with Defendants should be permitted to bid in the asset sale. Section 7(a)(ii) of the Settlement Agreement requires the SRP Parties to "[s]ell all assets to third parties." Agt. § 7(a)(ii). Plaintiffs argue that the term "third parties" necessarily excludes Defendants' affiliates.[3] *See* Pls.' Jan. 14 Ltr. at 3. Defendants, by contrast, argue that a "third party" is anyone who is "not a party to . . . [an] agreement," which can include an affiliate of a party. Defs.' Jan. 14 Ltr. at 5 (quoting *Third Party*, Black's Law Dictionary (12th ed. 2024)). Defendants also point out that attachments to the Settlement Agreement expressly refer to "*unrelated* third parties," while Section 7(a)(ii) does not similarly limit "third parties." *Id.* (quoting Agt., Attachments C & D § 3.06(d) ("Any conflict of interest . . . shall be conclusively deemed fair and reasonable to the Company if such conflict of interest . . . is . . . on terms no less favorable to the Company than those generally being provided to or available from

---

[3] Plaintiffs' reliance on *Hawkins v. Daniel*, 273 A.3d 792 (Del. Ch. 2022), *aff'd*, 289 A.3d 631 (Del. 2023), is misplaced. In *Hawkins*, the Court interpreted the term "MedApproach Person" to include people affiliated with MedApproach. *Id.* at 831–32. It said nothing about whether contractual references to third parties exclude affiliates, and therefore does not support Plaintiffs' interpretation.

*unrelated* third parties . . . ." (emphasis added))). For the reasons explained in their papers, Defendants offer the better contractual reading. The Implementing Order will not preclude affiliates from bidding for assets.[4]

Fourth, Defendants seek to include language in the Implementing Order providing that:

> [t]he Special Magistrate shall not be required to effect sales of Assets in a manner that the Special Magistrate reasonably determines in good faith would be reasonably likely to result in a violation of the applicable fiduciary or investment adviser duties owed to Fund II or to Fund II's limited partners with respect to their investment in Fund II.

[Proposed] Order Granting Pls.' Mot. for Partial Summ. J. [hereinafter Defs.' Order] § 12, Dkt. 70; Defs.' Jan. 14 Ltr. at 5–6. Defendants draw this language from Section 7(b) of the Settlement Agreement, which states that the SRP Parties shall not be required to effect sales of assets under similar circumstances. Agt. § 7(b). Plaintiffs oppose this addition, pointing out that "the Special Magistrate is subject to duties arising from the Court's appointment," not to fiduciary duties. Pls.' Jan. 14 Ltr. at 9. To resolve this dispute, the Court has included language in the Implementing

---

[4] Defendants agree "to the Special Magistrate imposing safeguards—for instance, 'blind' bidding that conceals bidders' identities, or a confidential requirement that any purchase by a Stronghold-advised fund, including current LPs, be at a fixed premium of 3% above any other bid." Defs.' Jan. 16 Ltr. at 2, Dkt. 73. The Special Magistrate will have discretion to design the bidding process with these or other safeguards.

Order expressly authorizing (but not requiring) the Special Magistrate to make an application to the Court if he or she believes that effecting the sale of any Asset in a particular manner would be harmful to the interests of Fund II's limited partners.

Fifth, Defendants also include language in the Implementing Order permitting the Special Magistrate, in his or her discretion, to:

> design a [s]ale [p]rocess that permits limited partners of Fund II other than the Plaintiffs to elect either (a) to receive their *pro rata* share of any net sales proceeds in accordance with the operative agreements of limited partnership for Fund II . . . and be withdrawn from Fund II or (b) to decline a *pro rata* share and instead receive as consideration the transfer of their *pro rata* interest into an alternative vehicle.

Defs.' Order § 12; Defs.' Jan. 14 Ltr. at 6–7. Because nothing in the Settlement Agreement prohibits other investors from investing their proceeds in any particular manner, Plaintiffs have no legitimate basis for opposing this language.[5]

Sixth, Plaintiffs seek to inject language in the Implementing Order permitting them to appoint a "Limited Partner Representative" to serve in an observer capacity during the sale process. Pls.' Jan. 14 Ltr. at 7. Such a provision goes beyond Plaintiffs' rights in the Settlement Agreement and therefore will not be included in the Implementing Order.

---

[5] Indeed, Plaintiffs agree that "[l]imited partners who wish to invest their sale proceeds in a new Stronghold fund are free to do so." Pls.' Jan. 20 Ltr. at 3, Dkt. 74.

Seventh, Defendants propose language to permit the Special Magistrate "in [his or her] discretion [to] cause the Portfolio Companies to acquire new Leases or Mineral Interests for the benefit of Fund II." Defs.' Order § 17; Defs.' Jan. 14 Ltr. at 8. For reasons discussed in the Ruling, acquiring new assets is inconsistent with the Settlement Agreement and will not be permitted under the Implementing Order.

Eighth, Plaintiffs seek to prohibit the SRP Parties from causing Fund II to incur expenses except as agreed to by Plaintiffs and ask for monthly expense reporting to Plaintiffs. Pls.' Jan. 14 Ltr. at 2, 6–7. Section 7(a)(iii) of the Settlement Agreement states that distributions will be "subject to the terms of the applicable governing agreements of the applicable entity (e.g., the right to pay expenses and set aside appropriate reserves for anticipated liabilities)." Agt. § 7(a)(iii). The Implementing Order will not alter these terms by imposing additional limitations on expenses.

Concurrent with this letter, the Court has entered a form of Implementing Order consistent with the above.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor